**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Tracy Coy POE, Leroy Dale Hines, Carla Florentine Hines, Anna Mae Hines, Paul E. Neal, William R. Gibbs and Edward E. Harma, Defendants-Appellees.**

**Nos. 82–2437 to 82–2443.**

United States Court of Appeals,
Tenth Circuit.

July 25, 1983.

See also 713 F.2d 584.

Sheryle L. Jeans, Atty., U.S. Dept. of Justice, Kansas City, Mo. (William S. Price, U.S. Atty., W.D. of Okl., Oklahoma City, Okl., David B.B. Helfrey and Robert E. Mydans, Attys., U.S. Dept. of Justice, Kansas City, Mo., with her on the brief), for plaintiff-appellant.

Philip F. Cardarella, Kansas City, Mo. (James Patrick Quinn and Katheryn Shields, Kansas City, Mo., with him on the brief), for Tracy Coy Poe, defendant-appellee.

Warren Gotcher, McAlester, Okl., for William R. Gibbs, defendant-appellee.

Nicholas Garrett, Lawton, Okl., for Edward E. Harma, defendant-appellee.

Michael Gassaway, Oklahoma City, Okl., for Leroy Dale Hines, defendant-appellee.

Carl Hughes, Oklahoma City, Okl., for Carla Florentine Hines, defendant-appellee.

Daniel K. Zorn, Oklahoma City, Okl., for Anna Mae Hines, defendant-appellee.

G. Michael Blessington, Oklahoma City, Okl., for Paul E. Neal, defendant-appellee.

Before McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

McWILLIAMS, Circuit Judge.

In a three-count indictment, Tracy Poe, Leroy Hines, Carla Hines, Anna Mae Hines, Paul Neal, William Gibbs, Edward Harma, Donna Fogerty, and Mark Baron were charged in the first count with violations of 18 U.S.C. § 1955. Poe and Gibbs were also charged in a second and third count with violations of 18 U.S.C. § 1952 and § 1084. On the second day of a joint jury trial, Fogerty and Baron pled guilty to a violation of § 1084. After the fifth day of the trial, when the government was still presenting its case-in-chief, the district court, on motion of all the defendants, declared a mistrial. The basis for the mistrial order was the district court's finding that there had been "repeated violations" by government witnesses of the court's sequestration order entered before trial, pursuant to the provisions of Fed.R.Evid. 615.

Thereafter, all defendants jointly moved to dismiss the indictment on the ground that to attempt to retry the defendants would violate Fifth Amendment rights relating to double jeopardy. One defendant, Anna Mae Hines, also moved to dismiss on the grounds that there had been a violation of her Sixth Amendment rights relating to a speedy and public trial by an impartial jury and to confront adverse witnesses, including the right to fully and meaningfully cross-examine such witnesses. The district court granted defendants' motions to dismiss, and dismissed the indictment. Pursuant to 18 U.S.C. § 3731, the government now appeals the district court's order of dismissal. We reverse.

At the outset, the claimed misconduct of the prosecutor, and more particularly the conduct of two government witnesses, should be examined in context.

Prior to the first witness being called, the government requested that all witnesses be sequestered, as permitted by Fed.R.Evid. 615. None of the defendants objected to such request. The district court granted the government's request and spoke as follows:

> The Court: All right. The rule has been invoked with regard to all of the witnesses except the case agent and the expert witnesses to remain outside the courtroom until such time as you are called as a witness in this case. You will also be admonished and instructed not to discuss your testimony with any other witness in the case.
>
> Now, I'll ask you gentlemen, if you will, to assist me in enforcing the rule since I am not acquainted with your witnesses.

How many witnesses, if any, were present when the district court made the foregoing comment is not known.

The mistrial was based on two alleged violations of the exclusion order by two FBI agents, assuming, of course, that the statement made by the court can be deemed an order. The first incident concerns agent James M. Hawkins. Agent Hawkins was the twenty-first witness called by the government, and the second witness to testify about the search of the Poe residence. Hawkins testified, *inter alia,* concerning his participation in the search of the Poe house, which was made over three years prior to the trial of the case, pursuant to a search warrant. On cross-examination, Hawkins was asked if he had participated in a strip search of two young persons present at the Poe residence at the time of the general search of the premises. Hawkins stated that he did not recall any strip search. Hawkins was then confronted with a copy of an FBI report which indicated there had been such strip searches. Hawkins, when

shown the report, stated that there may well have been strip searches, but that he personally did not participate in them and had no first-hand knowledge concerning them.

At a recess of court after the conclusion of Hawkins' testimony, Hawkins engaged in conversation with several other FBI agents who were waiting to be called as government witnesses. This conversation, which took place in a hallway, was overheard by defense counsel and promptly reported to the district court. The conversation was initiated by inquiry as to why Hawkins had been so long on the witness stand. In response to such inquiry, Hawkins stated that there had been some question as to whether there had been any strip searches at the Poe residence, and whether he had ordered such or participated in them. The conversation generally pertained to the strip search issue. In this regard, other government witnesses later testified that there were, in fact, two strip searches conducted at the Poe residence, and that nothing of an incriminating nature was discovered in either search. Neither of the persons stripsearched was named as a defendant in the present proceedings.

At the conclusion of the hearing into the Hawkins incident, which, of course, was conducted outside the presence of the jury, the defendants moved, *inter alia,* for a mistrial. The district court took the matter under advisement, instructed the jury that the violation of the exclusion order by Hawkins could be considered by the jury in assessing Hawkins' credibility and the credibility of the others with whom he had conversed, and ordered the trial to continue.

The second alleged violation of the exclusion order involved former agent Nanette Hittmeirer. Ms. Hittmeirer participated in the searches of the residences of Carla Hines and Anna Mae Hines. A preceding witness had been asked on cross-examination whether there had been any strip searches at either of the Hines' residences. He testified that he had not participated in such a search. To dispel any possible inference that there had been strip searches at either of the Hines' residences, the government called Ms. Hittmeirer as its next witness and she testified, *inter alia,* that there was no strip search at either residence.

On cross-examination, Ms. Hittmeirer was asked if she had discussed her testimony with anyone *prior* to testifying. She answered that she had discussions with the lead government counsel and, more particularly, with a supervisory FBI agent as to possible areas of cross-examination. The supervisory agent had previously testified in the case, although his testimony was not the subject of any discussion between himself and Ms. Hittmeirer. Moreover, his earlier testimony did not in any way pertain to the search of the Hines' residences. Further cross-examination established that the supervisory agent had advised Ms. Hittmeirer that she might well be questioned about possible strip searches at the Hines' residences. Ms. Hittmeirer stated that her conversation with the supervisory agent lasted about two to three minutes, and generally concerned areas about which she might be cross-examined.

It was at this juncture that the defendants renewed their motions for a mistrial based on what the defendants thought was a violation of the exclusion rule by Ms. Hittmeirer. The government's position was that Ms. Hittmeirer had not, in fact, violated the court's exclusion order. In this connection, we note that the exclusionary order made by the district court forbade a witness from discussing his testimony, once given, with others. However, it makes no specific mention of whether a witness could discuss with another what possible areas he, or she, might be questioned about when called as a witness. In this latter regard, the order is unclear.

In any event, after hearing argument, the district court declined to order a mistrial, and the cross-examination of Ms. Hittmeirer continued to its conclusion. The trial then was recessed over a three-day weekend. On the following Tuesday the district judge, who apparently had been reconsidering the entire matter over the week-end recess, declared a mistrial without any fur-

ther argument of counsel. Ten days later he reset the case for trial. The defendants then filed motions to dismiss, which were subsequently granted.

The district court's order declaring a mistrial was probably within its discretionary powers. There were, of course, other remedies available, but we are not prepared to hold that the order declaring a mistrial was an abuse of discretion. In reality, any present discussion of whether a mistrial order was proper is now academic. A mistrial was, in fact, declared and the jury discharged. We are unable to reinstate the aborted proceeding so that the trial can take up where it left off. Hence, the crucial issue, as we see it, is whether, a mistrial having been ordered at the defendants' request, a retrial is barred by either the Fifth or Sixth Amendments. We think not.

■ The basic reason given by the district court for dismissing the indictment was that to retry the defendants would violate the Double Jeopardy Clause of the Fifth Amendment. Such is not our view of the matter. The general rule is that where, as here, a defendant requests a mistrial, the Double Jeopardy Clause does not bar retrial.* In *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Supreme Court enunciated a "narrow exception" to the general rule. Such exception occurs where the mistrial is caused by prosecutorial misconduct which is intended to subvert the protections afforded by the Double Jeopardy Clause and calculated to "goad" a defendant into moving for a mistrial. Prosecutorial misconduct which is merely harassing or overreaching, although sufficient to justify a mistrial, will not bar a retrial absent such intent. The facts of the instant case do not bring it within the narrow exception created by *Kennedy.*

■ Assuming that the intent of the government's witnesses is transferable to the prosecutor, there is absolutely nothing in the present record to indicate that, by their actions, either agent Hawkins or former agent Hittmeirer had an intent to "goad" the defendants into asking for a mistrial or to "subvert" the protection afforded by the Double Jeopardy Clause. Hawkins and Hittmeirer may well have been careless in their discussions with other agents, but, under *Kennedy,* that is not enough. As concerns the double jeopardy argument, see *United States v. Robuck,* 690 F.2d 794 (10th Cir.1982), where, in line with *Kennedy,* we said that when a mistrial is granted at a defendant's request, his retrial is not barred by the Double Jeopardy Clause unless the prosecutor's misconduct was intended to provoke defendant's motion.

■ One defendant, Anna Mae Hines, also sought dismissal on the alternative ground that to retry her would violate Sixth Amendment rights and the district court, in dismissing the indictment as to all defendants, based its dismissal on the Sixth Amendment also. In so doing, the district court opined that defendants' right to cross-examine "has been seriously eroded by the acts of the government agents." We fail to see how defendant's right to cross-examine at a retrial has been irreparably prejudiced by what occurred at the first trial. In fact, the entire matter of strip searches and cross-examination in connection therewith is, in our view, blown out of all proportion.

* The one defendant, Poe, states that he did not actually move for a mistrial, and that he only moved for an outright dismissal of the indictment. It is true that after the inquiry into the Hawkins incident, Poe did argue for dismissal. However, other defendants did move for a mistrial, some for a dismissal also, as opposed to a mistrial, and others asked for an instruction concerning credibility which the district court did, in fact, give the jury. Be all that as it may, when the district court declared a mistrial, there was *no* objection from *any* defendant. Under the circumstances, we deem Poe's absence of any objection to be at least tacit, if not outright, approval. Further, the basis for the district court's eventual dismissal of the indictment was that intentional prosecutorial misconduct had provoked the defendants, and all of them, to seek a mistrial. We shall dispose of this appeal, then, on the same basis as the matter was presented to, and disposed of, by the district court. On the state of the record, we find no need to discuss the rule of "manifest necessity."

Agent Hawkins was uncertain as to whether there were strip searches made at the Poe residence. Other government witnesses established that there were, in fact, two strip searches conducted at the Poe residence, none of which disclosed any incriminating evidence. As concerns the search of the two Hines' residences, the evidence, so far at least, is that there were no strip searches conducted at either home. So, testimony concerning strip searches is of doubtful materiality.

In this regard, however, it was defendants' theory that government agents had been waging a "personal vendetta" against them, and that strip searches tended to prove that such was the case. We fail to see how proof of a strip search is proof that a "personal vendetta" was being waged by government agents. Strip searches are not a novelty, and are often necessary in order to recover contraband or prevent the destruction of incriminating evidence. To retry the defendants would not violate any Sixth Amendment rights of the defendants. We fail to see any "adverse consequence" flowing from any possible violation of Sixth Amendment rights. See *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Of course, the defendants understandably want to avoid any retrial, but that is insufficient.

We are not condoning the actions of the government's agents. Agent Hawkins did talk with other government witnesses regarding his testimony, and he should not have. Former agent Hittmeirer, before testifying, had talked with a supervisory agent concerning what she might be examined about. It is debatable whether Hittmeirer's conduct violated the exclusionary order. Whether either witness actually knew of the exclusionary order is not clear from the record. As indicated, the only exclusionary order in the record before us is general in nature, with no specific delineation of prohibited conduct. But as the district court itself observed at one point in the proceedings, to grant a mistrial and dismiss the indictment would not "punish" the two witnesses, but would only "punish" the public.

One final matter: the defendants point out that in resisting the motion for a mistrial, the prosecutor conceded that to declare a mistrial would necessarily require the court to later dismiss the indictment on double jeopardy grounds. Suffice it to say, that, apparently perceiving the error of its initial position, such is not the position of the government on appeal. In any event, we are not bound by any such misconception of the law.

The order and judgment of dismissal is vacated, and the case remanded with directions to reinstate the indictment.