**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOSE DE JESUS VALADEZ-
CAMARENA,

      Defendant-Appellant.

No. 97-2366

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-97-231 JP)

---

Peter E. Edwards, Assistant Federal Public Defender (Ann Steinmetz, Federal
Public Defender, with him on the briefs), Las Cruces, New Mexico, for
Defendant-Appellant.

Paula Burnett, Assistant United States Attorney (John J. Kelly, United States
Attorney, and Peter M. Ossorio, Supervisory Assistant United States Attorney, on
the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **BRORBY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

In late October 1997, Jose de Jesus Valadez-Camerena was on trial for conspiracy, 21 U.S.C. § 846, and possession with intent to distribute over five kilograms of cocaine, 21 U.S.C. § 841 (a) (1) & (b) (1) (A). In the middle of the trial, the government questioned an expert witness beyond the scope allowed by the judge. Mr. Valadez-Camarena moved for a mistrial, which was granted. He subsequently contended the Double Jeopardy Clause barred retrial because the prosecutor had goaded defense counsel into requesting a mistrial. After the district court held the prosecutor had not intended to provoke a mistrial, Mr. Valadez-Camarena was retried and convicted. He appeals, challenging only the district court's decision to allow a retrial. We affirm the conviction.

I.

In March 1997, Mr. Valadez-Camarena and a companion crossed the Mexican-American border and drove into the United States Border Patrol checkpoint south of Deming, New Mexico. After agents questioned him and noticed the strong smell of air freshener, they asked if they could further inspect his car. Mr. Valadez-Camarena consented, and the agents conducted a canine inspection which revealed packages of cocaine in hidden compartments of the car. A red leopard decal marked some of the cocaine packages and a red dove decal marked the others.

During the next two weeks agents stopped three other cars carrying cocaine

in similarly constructed secret compartments. The cocaine packages from these cars were also marked with either the red leopard or the red dove decal. The government charged Mr. Valadez-Camarena and the other adults caught with the marked packages with conspiracy and possession with intent to distribute five or more kilograms of cocaine.

At Mr. Valadez-Camarena's trial, the prosecution offered Dr. Edward Fransoza, a senior forensic chemist at the Drug Enforcement Agency (DEA), as an expert witness to testify that, on the basis of microscopic inspection, the same devices created the decals on the separately seized packages. Counsel for the government and the court engaged in the following colloquy to determine the permissible parameters of the expert's testimony:

Mr. Ossorio: [Dr. Fransoza] is not going to say that [the decals] come[] from a particular drug trafficking group or a particular cartel or anything like that. It's more in the – it's simply in the area of basic tool mark identification, screening and printing processes whereby one process prints a logo and apparently the same device, whatever it is, a stamp or a screen prints the same logo on another piece of plastic.

The Court: So, basically, all of the loads that you have mentioned in your case in chief, he's going to address the markings on all of those and the packaging on all of those and express an expert opinion as to that they are all similar in packaging and the stamp comes from the same stamping equipment.

Mr. Ossorio:      Exactly.

Rec., vol. 3, at 146. Defense counsel raised objections on relevancy grounds which the court overruled.

Dr. Fransoza explained that every time the government seizes cocaine packaging, the DEA investigates the markings on the packages and compares it to markings on packaging previously seized. If the DEA does not have a copy of the marking, it catalogs the new marking in its reference collection. Dr. Fransoza then testified that the red leopard on the packages found in Mr. Valadez-Camarena's car "came from the same device and therefore the same manufacturing source as the sample I took out of the reference collection to compare with . . . except . . . [t]he sample from the reference collection was printed in green ink, and this is printed in red ink." *Id.* at 161.

Soon thereafter, the court requested that counsel approach the bench and admonished the prosecutor for questioning the witness beyond the scope of what was tendered. The court and defense counsel were concerned that Dr. Fransoza's testimony about the green leopard already in the reference collection would seriously prejudice the jury by implying that defendant had been involved with drugs previously confiscated by the government. After excusing the jury, the court and prosecution engaged in the following exchange:

The Court:      Why was it necessary to elicit testimony about the

green reference leopard that he had in his computer independent of the loads that are the subject of this case?

Mr. Ossorio: Well, simply because that was the procedure that he always uses and that he used in this case, Your Honor.

The Court: And you don't see a problem with that Mr. Ossorio?

Mr. Ossorio: No, Your Honor, I don't.

Rec, vol. 3, at 165-66. After further discussion, defense counsel "mov[ed] for mistrial or in the alternative to strike all testimony of Dr. Fransoza." Id. at 168-69. The prosecution argued against a mistrial and asked instead for the court to give a limiting instruction. The court considered the matter and decided to grant the mistrial because it believed limiting instructions could not effectively cure Dr. Fransoza's prejudicial testimony.

A few days later, on November 3, 1997, Mr. Valadez-Camarena moved for a dismissal based on double jeopardy.[1] The court denied the motion, finding "absolutely no evidence of any attempt by the Government in this case to goad the Defendant into moving for a mistrial. . . . The prejudicial testimony elicited by the Government can, at best, be characterized as prosecutorial negligence or

---

[1] Judge Vazquez was the original trial judge. Judges rotate through Las Cruces for one month at a time. Because the first trial took place at the end of October and defendant's motion was filed in early November, the judge ruling on the double jeopardy motion was Judge Conway, who had not granted the mistrial.

mistake." Brief of Aplt., Att. D at 1. Mr. Valadez-Camarena was subsequently tried and convicted.

## II.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982) (footnote omitted). Although the Double Jeopardy Clause usually bars retrial where the prosecution moves for a mistrial over the objection of the defense, in select circumstances it also prevents retrial where the first trial ended at the defendant's request. *See id.* at 672-673. When a prosecutor "'goad[s] the [defendant] into requesting mistrial' . . . the defendant's valued right to complete his trial before the first jury would be a hollow shell" were retrial permissible. *Id.* at 673 (quoting *United States v. Dinitz*, 424 U.S. 600, 611 (1976)); *United States v. McAleer*, 138 F.3d 852, 855-56 (10th Cir. 1998). Therefore, if the government intended to provoke the defendant into moving for a mistrial, retrial is barred. *See Kennedy*, 456 U.S. 679. The Double Jeopardy Clause applies only where the prosecution intentionally goads the defense, not where the prosecution is mistaken, careless, or even harassing. *See United States v. Powell*, 982 F.2d 1422, 1429 (10th Cir. 1992); *United States v. Poe*, 713 F.2d 579, 583 (10th Cir. 1983).

Some confusion exists in this circuit over the appropriate standard by which

to review the district court's decision in a double jeopardy goading case. Mr. Valadez-Camarena argues that we should apply a de novo standard, while the government contends that the abuse of discretion standard is proper. Both parties cite cases from this circuit as support for their positions.

The Supreme Court has made clear, however, that determining whether a prosecutor intended to goad the defense "merely calls for the court to make a finding of fact." *Kennedy*, 456 U.S. at 675. Such findings are reviewed for clear error. *See, e.g., United States v. Johnson*, 55 F.3d 976, 978 (4th Cir. 1995); *United States v. Ivory*, 29 F.3d 1307, 1310-11 (8th Cir. 1994); *United States v. Millan*, 17 F.3d 14, 18 (2d Cir. 1993); *United States v. Nichols*, 977 F.2d 972, 974 (5th Cir. 1992) (per curiam); *United States v. Dante*, 739 F.2d 547, 548 (11th Cir. 1984); *United States v. Curtis*, 683 F.2d 769, 776 (3d Cir. 1982). Consequently, in the specific context of double jeopardy goading cases, we will uphold the trial court's determination unless we conclude it is clearly erroneous.

It is true that we review de novo many issues brought under the Double Jeopardy Clause, as many of them raise questions of law. *See, e.g., United States v. Sarracino*, 131 F.3d 943, 949-950 (10th Cir. 1997) (concluding that separate federal convictions for murder and kidnapping do not offend the Double Jeopardy Clause); *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997) (reviewing a claim of multiplicity); *United States v. Sasser*, 974 F.2d 1544, 1550

(10th Cir. 1992) (determining whether defendant participated in single conspiracy or two separate conspiracies for double jeopardy purposes). Even in such cases, however, we examine the underlying factual findings under a clearly erroneous standard. *See United States v. Cordoba*, 71 F.3d 1543, 1545 (10th Cir. 1995). We recognize that in a prior goading case we reviewed the district court's decision to permit retrial for an abuse of discretion without addressing *Kennedy*. *See Powell*, 982 F.2d at 1429. *Powell*'s application of the abuse-of-discretion standard is not contrary to *Kennedy*, however, since in this kind of a case "'[a] district court would necessarily abuse its discretion if it based its ruling on . . . a clearly erroneous assessment of the evidence.'" *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 727 (10th Cir. 1993) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)); *see also Barrett v. Tallon*, 30 F.3d 1296, 1302 (10th Cir. 1994).

The record here strongly supports the district court's finding that the prosecution did not intend to provoke the defense into moving for a mistrial. Although the court held the prosecutor elicited inadmissible testimony from the expert witness, there is simply no evidence that the prosecutor was trying to goad the defense into moving for a mistrial. To the contrary, he seemed unaware of his mistake and contested defendant's mistrial motion, suggesting alternative remedies. Because there is no indication of intent on the part of the prosecutor,

this case does not fall into the "narrow exception" outlined in *Kennedy*, 456 U.S. at 673.

We uphold the district court's ruling that the prosecution did not intend to goad the defense into requesting a mistrial, and we therefore **AFFIRM** Mr. Valadez-Camarena's conviction.