**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

vs.

FRANK DANIEL GONZALEZ,

    Defendant - Appellee.

No. 00-1284

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 99-CR-166-N)

Sean Connelly, Assistant United States Attorney (Thomas L. Strickland, United States Attorney and James C. Murphy, Assistant United States Attorney, with him on the briefs), Denver, Colorado, for Plaintiff-Appellant.

Warren R. Williamson, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with him on the brief), Denver, Colorado, for Defendant - Appellee.

Before **KELLY**, **BALDOCK**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

    The government appeals from the district court's dismissal of the indictment against Frank Gonzales. We have jurisdiction under 18 U.S.C. § 3731

if double jeopardy does not bar the appeal. United States v. Hunt, 212 F.3d 539, 542-43 (10th Cir. 2000). We conclude that the appeal is not barred by double jeopardy and reverse and remand for further proceedings.

Background

Frank Gonzalez and his co-defendant, Miguel Espinoza, were charged with (1) conspiracy to distribute and possess with intent to distribute heroin and cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846; (2) distribution and possession with intent to distribute heroin and cocaine, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 18 U.S.C. § 2; (3) interstate travel with intent to promote and carry on drug trafficking, 18 U.S.C. §§ 1952(a)(3), 2; and (4) criminal forfeiture, 21 U.S.C. § 853. On the first day of Mr. Gonzales' trial, the government's second witness, FBI Special Agent Kevin Guidry, testified that he and another agent began surveillance of Mr. Espinoza in San Jose, California on the morning of August 9, 1997. III R. at 90. Mr. Espinoza boarded an airplane bound for Denver, Colorado, which Agent Guidry and the other agent also boarded. Id. at 91. Upon arriving in Denver, Agent Guidry and a Denver agent followed Mr. Espinoza throughout the greater Denver area. Id. at 92-93. Mr. Espinoza stopped at a strip mall where a Ford Thunderbird with California license plates was waiting. Id. at

94.[1] At this point in Agent Guidry's testimony, the following colloquy between the assistant United States attorney and Agent Guidry occurred:

> Q. Very well. Tell us what you personally observed when you approached this strip mall.
> A. I noticed a maroon Ford Thunderbird with California plates 3TST751, which is well-known to me from investigation - -
>     MR. WILLIAMSON [counsel for Mr. Gonzales]: Your Honor, I'm going to object to this.
>     THE COURT: Right. Just answer the question, Agent. I think you know better than this.
> A. I observed a maroon Thunderbird.
> Q. What was the license plate number?
> A. 3TST751.
> Q. Still remember it?
> A. Yes.
> Q. Had you seen that red Thunderbird before?
> A. Yes, I had. In the San Jose, California/Watsonville, California area.
> Q. Where was it when you saw it?
> A. It was in the strip mall towards the end of the strip mall.
> Q. Well, I mean, in the Watsonville/Salinas, California area?
> A. I'm not sure what you're - -
> Q. You've just testified that you had seen that red Thunderbird before.
> A. Yes.
> Q. Okay. Let's go - - let me clarify this. Where had you seen it before?
> A. I had seen it in conjunction with a drug investigation.

Id. at 94-95. At this point, counsel for Mr. Gonzales objected and moved for a mistrial, which the government opposed.     Id. at 96, 98-103. The district court

---

[1] The government argued in its opening statement that Mr. Gonzales had driven the Ford Thunderbird from Salinas, California to the strip mall within the past 24 hours. Id. at 3-4, 10-11. 8.6 pounds of heroin and 6 pounds of powder cocaine were found behind the firewall of the Ford Thunderbird. Id. at 4, 8-10.

granted the motion, id. at 102, and later granted Mr. Gonzales' motion to dismiss the indictment with prejudice. V R. at 96.

## Discussion

On appeal, the government argues that the district court dismissed the indictment based upon an incorrect legal analysis concerning prosecutorial intent. We review this issue de novo. [2] United States v. Valadez-Camarena, 163 F.3d 1160, 1163 (10th Cir. 1998).

The general rule is that the Double Jeopardy Clause does not bar retrial where a defendant moves successfully for a mistrial. A narrow exception exists where "the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Oregon v. Kennedy, 456 U.S. 667, 679 (1982) (emphasis added); United States v. Poe, 713 F.2d 579, 583 (10th Cir. 1983).

At the hearing on Mr. Gonzales' motion to dismiss, the district court heard testimony from the government agent assigned to the case and Agent Guidry. V R. at 6-64. After considering this testimony, the government's opening

---

[2] Because we reverse the district court's dismissal of the indictment on this point of law, we do not reach the government's alternative argument that the district court's finding that the government intended to goad the defendant into requesting a mistrial was clearly erroneous.

statement, and the colloquy between the assistant United States attorney and Agent Guidry, the court found that the government had persisted in introducing to the jury highly prejudicial evidence that the Thunderbird had been seen in connection with a drug investigation.  [3] Id. at 89-96.  This conduct, the court concluded, was a result of careful planning and coordination between the government and Agent Guidry.  Id. at 94.  From this evidence of prosecutorial overreaching, the court relied upon United States v. McMurry, 818 F.2d 24 (10th Cir. 1987), and inferred that the government had in fact intended to goad the defendant into requesting a mistrial.  Id. at 86, 95-96.  The court explained that it could infer such intent under the principle "that a person intends the natural and probable consequences of his or her acts if those acts are knowingly done" and that this "is an instruction that is given to juries all the time."  Id. at 86.

The district court's analysis was incorrect.  To the extent it allowed an inference of prosecutorial intent to force a mistrial in the absence of objective evidence, the analysis was contrary to Kennedy and our precedent, including McMurry, 818 F.2d at 25-26.  See also Valadez-Camarena, 163 F.3d at 1163-64; United States v. Powell, 982 F.2d 1422, 1428-29 (10th Cir. 1992); Poe, 713 F.2d at 583.  The analysis also was too cursory because, while one natural and

---

[3] We do not decide whether the prosecution intended to introduce evidence that the Ford Thunderbird was seen in connection with a drug investigation and whether such evidence was prejudicial.

probable consequence of prosecutorial efforts to introduce favorable, albeit prejudicial, evidence might be a mistrial, another natural and probable consequence of such efforts might be conviction .

In Kennedy , the Supreme Court drew the distinction between evidence of prosecutorial overreaching and prosecutorial intent to force a mistrial. The district court did not recognize or apply this obvious and critical distinction. "Prosecutorial conduct that might be viewed as . . . overreaching, even if sufficient to justify a mistrial on defendant's motion, . . . does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." 456 U.S. at 676; accord Valadez-Camarena , 163 F.3d at 1163. The Seventh Circuit drew this same distinction in United States v. Jozwiak :

> Prosecutors intend to secure convictions, intend to secure all advantages the adversary system allows. An overstep . . . may lead to howls from the defense, and next to an argument that the overstep was intended to goad the adversary into howling. Yet a search for intent that leads only to a conclusion that the prosecutor wanted to win is pointless. We must be looking for intent to do something that undercuts the interests protected by the double jeopardy clause. Kennedy distinguishes intent to improve the chance that the trier of fact will return a favorable decision from the forbidden intent to avoid decision by the trier of fact.

954 F.2d 458, 460 (7th Cir. 1992) (emphasis in original); accord United States v. White , 914 F.2d 747, 752 (6th Cir. 1990). The district court's analysis of the prosecution's intent in this case did not "look[] for intent . . . to avoid decision

by the trier of fact." Jozwiak , 954 F.2d at 460 (emphasis in original).

The practical implications of the district court's analysis of intent in this context also merit discussion. By focusing on the natural and probable consequences of prosecutorial conduct rather than the intent underlying such conduct, the standard employed by the district court would, as the government argues, "convert Kennedy 's narrow exception into the rule . . . ." Aplt. Br. at 16. That is, under the district court's reading of Kennedy , any prosecutorial conduct that induces the defendant to request a mistrial could bar retrial. Indeed, as the government observes, under this reading of Kennedy , "many cases - - including Kennedy itself - - would have been decided differently." Id. at 18. In Kennedy , for example, retrial would have been prohibited because a mistrial was unquestionably the natural and probable consequence of the prosecutor's question as to why the witness had filed a criminal complaint against the defendant—"Is that because he is a crook?" 456 U.S. at 669.

In the alternative, Mr. Gonzales argues that the district court's dismissal should be affirmed because the district court could have dismissed the indictment by exercising its supervisory power. Aplee. Br. at 24-29. Although we are unpersuaded by Mr. Gonzales' argument that the district court would employ such a draconian sanction, we decline to consider whether the district court would have exercised its supervisory power to dismiss the indictment because

such exercise is an act of discretion that must, of course, be exercised within the confines of the correct law. United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1116 (10th Cir. 1998); United States v. Eaton, 31 F.3d 789, 791 (9th Cir. 1994); Barnhill v. United States, 11 F.3d 1360, 1367 (7th Cir. 1993). Only after such an exercise of discretion would questions of law and fact arise. See, e.g., United States v. Kilpatrick, 821 F.2d 1456, 1460, 1467 (10th Cir. 1987).

REVERSED AND REMANDED.