FILED
United States Court of Appeals
Tenth Circuit

February 24, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ALFRED R. TAFOYA,

      Defendant - Appellant.

No. 08-2113

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 07-CR-00697)**

David Williams, Assistant United States Attorney (Gregory J. Fouratt, United
States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

Scott Davidson, Albuquerque, New Mexico, for Defendant - Appellant.

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

**KELLY**, Circuit Judge.

      In early 2008, Defendant Alfred R. Tafoya was on trial for one count of
being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and
924(a)(2). See 1 R. Docs. 2, 54. During direct examination of its third witness,

the government elicited testimony that was beyond the scope permitted by the district judge. See 1 R. Doc. 124. Mr. Tafoya immediately moved for a mistrial, which was granted. Mr. Tafoya subsequently moved to dismiss the charge, contending that the Double Jeopardy Clause barred retrial because the prosecutor had goaded defense counsel into requesting a mistrial. 1 R. Doc. 146. After a hearing, the court denied Mr. Tafoya's motion to dismiss, holding that the government did not intend to provoke a mistrial, and therefore retrial was not barred by the Double Jeopardy Clause. 1 R. Doc. 165 at 115. This interlocutory appeal followed. Our jurisdiction arises under the collateral order doctrine. See Abney v. United States, 431 U.S. 651, 659-60 (1977); United States v. Musson, 802 F.2d 384, 385 (10th Cir. 1986); see also 28 U.S.C. § 1291. We AFFIRM.

Background

Because this case comes to us as an interlocutory matter, we discuss only the testimony and proceedings necessary to this appeal.

On April 10, 2007, Defendant Alfred R. Tafoya was indicted on one count of being a felon in possession of a firearm on January 14, 2007, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). 1 R. Doc. 2. After various motions and a hearing on those motions, a superseding indictment was filed on December 5, 2007, extending the date of the original indictment to include January 15, 2007, and adding a second count of being a felon in possession of body armor on

February 13, 2007, in violation of 18 U.S.C. §§ 931(a)(1) and 924(a)(7). 1 R. Doc. 54. The district court granted Mr. Tafoya's motion for severance of the counts, and trial commenced on the firearm charge on February 19, 2008. See 1 R. Doc. 165 at 95-96.

Prior to trial, to avoid unfair prejudice and confusion of the issues, the district court issued an order limiting evidence concerning the events of January 15, 2007. 1 R. Doc. 124 at 47-48 (indicating that Mr. Tafoya was not on trial for any other acts, other than illegally possessing a firearm, that might have been committed on January 15); 1 R. Doc. 136 at 63-64. The order required the government to call Mr. Robert Walker as its first witness to testify to the events of January 15, and limited his testimony to "his observations regarding Defendant's possession of the shotgun and the background information necessary to place those observations in context." 1 R. Doc. 124 at 47. The government would only be permitted to elicit testimony from other witnesses about the events of January 15 after Mr. Walker's cross-examination was completed, and "only as necessary to clarify specific matters raised during Mr. Walker's testimony as it relate[d] to Defendant's alleged possession of the shotgun." 1 R. Doc. 124 at 48. Furthermore, the court indicated that it would instruct the jury "as to the limited purposes for which the jurors may consider the events of January 15, 2007," in order to make clear that the January 15 evidence was "to be considered only for the limited purpose of determining whether Defendant knowingly possessed the

shotgun on that occasion." 1 R. Doc. 124 at 48. Finally, in the event that Mr. Tafoya's counsel raised additional issues on cross-examination that called for rebuttal, the government was instructed to "alert the Court of the proposed scope of such rebuttal outside the jury's presence before proceeding any further, in order to allow for a timely objection by opposing counsel and an informed ruling by the Court." 1 R. Doc. 124 at 48. In issuing the order, the court was attempting to avoid the introduction of evidence about events other than Mr. Tafoya's alleged possession of a weapon, including his possible forcible entry into Ms. Darlene Eller's home and his forcible detention of witnesses in the early morning hours of January 15, 2007. 1 R. Doc. 124 at 47. Such evidence was deemed to be unfairly prejudicial to Mr. Tafoya, and the court issued explicit instructions in its order on how counsel were to deal with the court's evidentiary limitations. 1 R. Doc. 124 at 47-49.

During trial, Ms. Susan Lopez, Mr. Walker, and Valencia County Sergeant Simon Martinez testified to the events that unfolded on the night of January 14, 2007, and the early morning hours of January 15, 2007. After examining Sergeant Martinez about Mr. Tafoya's initial departure from the home on the night of January 14, the prosecutor then asked an open-ended question, "What happened after that?" 2 R. Doc. 145 at 140. Sergeant Martinez answered, referring to Mr. Tafoya's return to the home with the three other men in the early hours of January 15, "Probably a good 45 minutes later, dispatch dispatched us

back out there and advised us that the bondsmen were back, and that this time, they were battering some of the residents." 2 R. Doc. 154 at 140. Upon hearing this response, Mr. Tafoya moved for a mistrial, arguing that the prosecutor had elicited the prejudicial information the court had wanted excluded. 2 R. Doc. 154 at 140-41. After allowing the parties to discuss the matter at length, the district court granted Mr. Tafoya's motion on the basis that a limiting instruction could not cure the prejudice arising from Sergeant Martinez's response to the government's open-ended question. 2 R. Doc. 154 at 140-58; see also 1 R. Doc. 136 at 59 (district court order granting mistrial, noting that "counsel for the Government elicited inadmissible testimony from a witness"). The district court then scheduled a status conference to determine whether the case would be retried. 1 R. Doc. 136 at 69.

On March 29, 2008, Mr. Tafoya filed a motion to dismiss the firearm possession charge in the superseding indictment because retrial would violate the Double Jeopardy Clause. 1 R. Doc. 146 at 71. On April 30, 2008, the district court held a hearing on the motion. 2 R. Doc. 166. At the hearing, Mr. Tafoya's counsel requested to take sworn testimony from the assistant United States attorney (AUSA) who had argued the case originally and whose question triggered the mistrial. 2 R. Doc. 166 at 189, 199-200. The district court opted instead to conduct the hearing without swearing in the AUSA, remarking that he is "an officer of the Court." 2 R. Doc. 166 at 167. The district court then

- 5 -

proceeded to ask the AUSA a series of questions about his trial preparation, his response to Mr. Tafoya's motion to dismiss, its prior limiting order and instructions, and his intent in calling Sergeant Martinez as a witness, among other issues. 2 R. Doc. 166 at 167-80. In response, counsel indicated that he did prepare the witness and "[s]ometimes we get exactly what we think they're going to say and sometimes we don't. And that's what happened in this case." 2 R. Doc. 166 at 178. In retrospect, he conceded that it was "an inartful question" given the district court's limitations, 2 R. Doc. 166 at 179, that he "shouldn't have asked that question," 2 R. Doc. 166 at 172, 178, and that he "did not do a good job" of conveying the testimony limitations to Sergeant Martinez, 2 R. Doc. 166 at 194. In response to Mr. Tafoya's counsel's request, the district judge also inquired about his legal experience. 2 R. Doc. 166 at 191-92. Counsel responded with his background as a trial attorney in various city, state, and federal positions, and acknowledged that this was his first trial as an AUSA.[1] 2 R. Doc. 166 at 192-93.

Citing Oregon v. Kennedy, 456 U.S. 667 (1982), United States v. Gonzales, 248 F.3d 1201 (10th Cir. 2001), and cases from other circuits, including United States v. Hagege, 437 F.3d 943 (9th Cir. 2006), 2 R. Doc. 166 at 196-97, the district court determined, under the approach established by these cases, that an

---

[1] He was supervised in person throughout the trial by a more senior prosecutor. 2 R. Doc. 166 at 193.

evidentiary hearing was unnecessary and that the AUSA's conduct, while perhaps negligent, was not sufficient to justify dismissing the indictment, 2 R. Doc. 166 at 198. Moreover, the district court found that it was not his "intent to goad the defendant into moving for a mistrial." 2 R. Doc. 166 at 198-99.

On May 2, 2008, the district judge memorialized its determination in a lengthy order. 1 R. Doc. 165. In that order, the district court decided that Mr. Tafoya had presented a colorable double jeopardy claim. 1 R. Doc. 165 at 109. However, after reviewing the various setbacks suffered by the prosecution in the previous trial and the facts in the prosecution's favor, 1 R. Doc. 165 at 110-13, the district court found that the case did "not fall within the narrow exception under which the retrial of a criminal defendant who has successfully moved for a mistrial is barred by the Double Jeopardy Clause," 1 R. Doc. 165 at 113. Therefore, the district court denied Mr. Tafoya's motion to dismiss the possession charge in the superseding indictment. 1 R. Doc. 165 at 115. Mr. Tafoya filed a notice of appeal on May 7, 2008. 1 R. Doc. 167.

## Discussion

Mr. Tafoya argues that the district court erred in denying his motion to dismiss the superseding indictment. On appeal he argues that the district court erred in (1) finding that the AUSA did not intentionally goad Mr. Tafoya into moving for a mistrial, (2) preventing Mr. Tafoya from questioning the AUSA

under oath at the evidentiary hearing, and (3) applying an incorrect legal standard to determine the AUSA's intent. Each of these claims is addressed below.

## A. Lack of Intent

The Double Jeopardy Clause states that no person "shall . . . for the same offence . . . be twice put in jeopardy of life or limb." U.S. Const. amend. V. It is well established that the Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense." Kennedy, 456 U.S. at 671. Although the Double Jeopardy Clause "usually bars retrial where the prosecution moves for a mistrial over the objection of the defense, in select circumstances it also prevents retrial where the first trial ended at the defendant's request." United States v. Valadez-Camarena, 163 F.3d 1160, 1162-63 (10th Cir. 1998) (citing Kennedy, 456 U.S. at 672-73). "When a prosecutor goads the defendant into requesting mistrial 'the defendant's valued right to complete his trial before the first jury would be a hollow shell' were retrial permissible." Id. at 1163 (quoting Kennedy, 456 U.S. at 673) (internal quotation marks and alterations omitted); see also United States v. Dinitz, 424 U.S. 600, 611 (1976) (discussing the subjective intent standard, later narrowed by Kennedy). "Therefore, if the government intended to provoke the defendant into moving for a mistrial, retrial is barred." Valadez-Camarena, 163 F.3d at 1163. That said, retrial will only be barred "where the prosecution intentionally goads the defense, not where the prosecution is mistaken, careless, or even harassing." Id.; see also United States

v. Powell, 982 F.2d 1422, 1429 (10th Cir. 1992) ("Carelessness or mistake on the part of the prosecution . . . is not sufficient to bar retrial under the Double Jeopardy Clause.").

In a double jeopardy goading case, we review the factual findings underlying a trial court's determination for clear error. Valadez-Camarena, 163 F.3d at 1163. A district court's factual finding is clearly erroneous when "it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." Plaza Speedway Inc. v. United States, 311 F.3d 1262, 1266 (10th Cir. 2002) (quoting Manning v. United States, 146 F.3d 808, 812 (10th Cir. 1998)) (alterations omitted). Under this standard, "we view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence." Id. (quoting Manning, 146 F.3d at 813) (alterations omitted).

In his brief, Mr. Tafoya raises a panoply of events, which, taken together, he urges, demonstrate the AUSA's intent to goad the defense into moving for a mistrial. Essentially, Mr. Tafoya argues that we must look beyond counsel's words at the evidentiary hearing, which disclaim any intent to goad the defense, and instead look to the totality of the facts and circumstances surrounding the mistrial to assess intent. Aplt. Br. 22-25. Among the facts Mr. Tafoya raises are that (1) counsel violated the explicit pre-trial order; (2) counsel admitted that he

should not have asked the open-ended question and that he failed to prepare the witness adequately; (3) both Ms. Lopez and Mr. Walker were having trouble remembering whether Mr. Tafoya had actually possessed the firearm; and (4) the government had lost a Batson challenge during voir dire. The inference to be taken is that counsel was aware his case was going badly and provoked a mistrial in order to save it. We disagree.

Under Kennedy, we require only that the district court make a factual determination, "[i]nferring . . . from objective facts and circumstances," whether an attorney acted with intent to "subvert the protections afforded by the Double Jeopardy Clause." Kennedy, 456 U.S. at 675-76. While here the district court found that Mr. Tafoya's double-jeopardy claim was "colorable and not frivolous," 1 R. Doc. 165 at 109, it also found that the AUSA's "mistakes were never intended to provoke or goad the Defendant into moving for a mistrial," 1 R. Doc. 165 at 112. Relying on counsel's explanation of his errors, his possible misunderstanding of the court's limiting order, the prosecutors' arguments against a mistrial, and their decision not to appeal the district court's adverse pretrial rulings, the district court determined that the government intended to try its case to completion and avoid a mistrial. 1 R. Doc. 165 at 112-13.

The record supports the district court's conclusion. First, the government suggested a limiting instruction to cure any prejudice and argued vehemently against a mistrial. 2 R. Doc. 154 at 141-46, 149-56. In fact, the AUSA's

supervising attorney also argued against a mistrial. 2 R. Doc. 154 at 156-57. Second, the AUSA provided a rational explanation for what happened—an open-ended question combined with witness preparation that should have been more explicit about the district court's limitation produced a response that unfortunately touched on prohibited matters. 2 R. Doc. 154 at 155; 2 R. Doc. 166 at 168, 171, 194-95. Third, he explained repeatedly that he had no intent to goad, 2 R. Doc. 166 at 167, 179, and that he simply did not expect Sergeant Martinez to respond in the way that he did, 2 R. Doc. 166 at 171-72, 178-79. Fourth, the question itself ("What happened next?") does not imply any intent to goad defense counsel to move for a mistrial. 2 R. Doc. 166 at 185-86. Finally, counsel discussed his legal background, but informed the court that this was his first trial as an AUSA. 2 R. Doc. 166 at 193. The district court did not err in holding that there was no intent to manipulate Mr. Tafoya into moving for a mistrial, and this case does not fall into the "goading" exception as set forth in Kennedy, 456 U.S. at 673-77.

B.      Cross-Examination at the Hearing

Mr. Tafoya next argues that the district court erred in preventing him from cross-examining the AUSA under oath with respect to his subjective intent. We review the decision to deny an evidentiary hearing under an abuse of discretion

standard.[2]  <u>United States v. Ary</u>, 518 F.3d 775, 782 (10th Cir. 2008) (citing

<u>United States v. Smith</u>, 413 F.3d 1253, 1282 (10th Cir. 2005)); <u>see also</u> <u>United</u>

<u>States v. Gilmore</u>, 454 F.3d 725, 730 (7th Cir. 2006) ("[A]n evidentiary hearing is

not a requirement.").

To make its determination on Mr. Tafoya's motion to dismiss, the district

court conducted an informal evidentiary hearing on April 30, 2008.  <u>See</u> 2 R. Doc.

166.  At that hearing, the district court initially described its procedures as

follows:

> [To AUSA:]  I'm going to require you to explain some matters here,
> so I'm going to ask that you stand at the podium.  I'm not going to
> require that you be sworn under oath at this time.  You are an officer
> of the Court.  The first level of inquiry will be informal.  I believe
> that is the proper way to conduct this hearing.

2 R. Doc. 166 at 167.  In response to Mr. Tafoya's request that he be permitted to

question counsel under oath, 2 R. Doc. 166 at 189, the district court further

outlined its procedures, 2 R. Doc. 166 at 197-98, adopting the "two-step"

approach used in the Seventh Circuit to determine whether or not a formal

---

    [2]  Citing to our decision in <u>Gonzalez</u>, 248 F.3d 1201, Mr. Tafoya argues
that the district court applied an incorrect legal standard to the motion to dismiss,
presenting a legal question that must be reviewed de novo.  His reliance on
<u>Gonzalez</u> is misplaced.  There, we reversed a district court's dismissal of an
indictment because it drew an inference of prosecutorial intent based on
overreaching to grant a mistrial, rather than determining that the prosecutor's
conduct arose out of an intent to provoke a mistrial.  <u>Id.</u> at 1204.  Thus, the court
applied an incorrect legal standard in granting the motion to dismiss, a question
we review de novo.  Here, the district court applied the correct legal standard, but
simply made a discretionary decision not to conduct a formal evidentiary hearing.

evidentiary hearing is necessary, see Hagege, 437 F.3d at 952-53 (discussing United States v. Oseni, 996 F.2d 186, 188 (7th Cir. 1993), and the similarly flexible approaches taken in the Second, Fourth, Sixth, and Eighth Circuits). Under this approach, the court must first "elicit an informal explanation from the prosecutor as to the reason for the misconduct, . . . and second, should assess the progress of the trial." 2 R. Doc. 166 at 197. In sum, "the evidentiary hearing serves as a backstop for the district judge if she is not, or a reasonable judge would not be, satisfied with the prosecutor's explanation." Gilmore, 454 F.3d at 730. Noting that it had been attentive throughout the trial, was entirely familiar with the case, and was satisfied with counsel's explanation of his mistake, the district court found "no basis to have [the AUSA] sworn under oath and provide testimony under oath." 2 R. Doc. 166 at 198.

Because we find the Seventh Circuit's two-step approach eminently reasonable, we adopt it for use in the Tenth Circuit. See Gilmore, 454 F.3d at 730 (approving, on a motion to dismiss indictment after mistrial, a district court's procedure of first conducting an informal hearing and accepting argument from both parties, and then considering own observations at trial). As such, a formal evidentiary hearing is not a requirement, but, instead, if the district judge is satisfied with both the prosecutor's explanation for his missteps and also by "what she witnessed in overseeing the trial," there is "no need to hold an evidentiary hearing to probe the prosecutor's intent." Id.

We recognize that proving intent or lack of intent is often circumstantial; however, under the process laid out, a formal evidentiary hearing is simply not required when the district court is satisfied with the explanation received. We will not disturb such a determination absent an abuse of discretion. In reviewing the hearing, we note that the district court was quite critical of the government, yet it found a lack of intent to goad after weighing the facts and circumstances and counsel's responses. See 1 R. Doc. 165 at 110-13. Moreover, the district court ensured that the AUSA was questioned on all areas requested by Mr. Tafoya at the April 30 hearing. 2 R. Doc. 166 at 180-81, 196. The court also noted that the open-ended question occurred toward the start of the government's case, before the full body of evidence had been presented. 2 R. Doc. 166 at 187.

In sum, we do not see how the outcome of this case would have been different had cross-examination been permitted, nor do we see how cross-examination would have assisted Mr. Tafoya in any way. For all of these reasons, we conclude that the district court did not abuse its discretion in denying the request for a formal evidentiary hearing.

C.     Gross Misconduct as a Ground for Barring Retrial

Mr. Tafoya also claims that the Double Jeopardy Clause bars retrial where the prosecutor's gross misconduct resulted in a mistrial. Mr. Tafoya goes so far as to argue that the Supreme Court wrongly decided Kennedy, and that this court ought to follow Justice Stevens's concurrence and even earlier precedent instead

- 14 -

of the majority opinion in <u>Kennedy</u>.  More specifically, Mr. Tafoya believes that <u>Kennedy</u> sets too high a bar in requiring proof of subjective intent, and that re-prosecution should be barred where a prosecutor merely overreaches.  Therefore, he alleges, the district court applied an incorrect legal standard in its determination on prosecutorial intent.  We review such questions of law de novo. <u>Gonzalez</u>, 248 F.3d at 1203.

The Supreme Court was clear in its holding that a district court must apply a subjective intent standard when making a determination on goading.  There, the Court explicitly rejected mere misconduct as a ground for invoking the bar on retrial, stating that "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion . . . does not bar retrial absent intent on the part of the prosecutor . . . ."  <u>Kennedy</u>, 456 U.S. at 675-76.  Even assuming that Mr. Tafoya is correct in arguing that the subjective intent standard presents a host of difficulties for a defendant, we are "bound to follow the decisions of the Supreme Court and the published decisions of this court."  <u>Tootle v. USDB Commandant</u>, 390 F.3d 1280, 1283 (10th Cir. 2004); <u>cf.</u> <u>Gonzales</u>, 248 F.3d at 1203-04 (discussing the subjective intent requirement); <u>Valadez-Camarena</u>, 163 F.3d at 1163 (same); <u>United States v. Poe</u>, 713 F.2d 579, 583 (10th Cir. 1983) (same).

AFFIRMED.