FILED
United States Court of Appeals
Tenth Circuit

January 13, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

FRANCISCO BURCIAGA,

     Defendant - Appellant.

No. 13-2212
(D.C. No. 1:08-CR-01541-MV-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **SEYMOUR**, and **MORITZ**, Circuit Judges.

The government charged and twice tried Francisco Burciaga for knowingly and intentionally possessing with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). His first trial ended in a mistrial after the prosecutor improperly attempted to impeach Burciaga with an e-mail Burciaga's attorney sent to the prosecutor regarding Burciaga's willingness to plead guilty to the charge. Before his second trial, Burciaga moved to dismiss the charge on double jeopardy

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

grounds. The district court denied the motion, concluding that although the prosecutor

had acted negligently and carelessly, he did not intentionally provoke the mistrial. After a

jury convicted Burciaga, he appealed the denial of his motion to dismiss. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the second appeal in this case. In the first, we reversed the district court's

order suppressing more than 17 kilograms of heroin found in Burciaga's car. *See United*

*States v. Burciaga*, 687 F.3d 1229, 1230 (10th Cir. 2012).

On remand, toward the end of the first trial, Burciaga testified on direct

examination that although he had pled guilty to previous crimes, he had not pled guilty to

this crime because he was not guilty:

> Q: And why did you plead [guilty to other, previously charged crimes]?
> A: Because I was guilty.
> * * *
> Q: Okay. Have you ever considered accepting a plea and pleading guilty in
> this case?
> A: No.
> Q: Why is that?
> A: Because I'm not guilty.

The following day, in an attempt to impeach this testimony, the prosecutor

questioned Burciaga on cross-examination:

> Q: Okay. Yesterday, you stated on direct examination that you never wanted to
> plead guilty in this case, right?
> A: Correct. Never.
> Q: Why is it your attorney came to me with a proposed plea in this case last
> spring?

Defense counsel objected, and the district court immediately dismissed the jury.

2

The district court advised the parties it was considering declaring a mistrial and heard argument from both sides. The prosecutor opposed a mistrial and defended his question, arguing he was entitled to impeach Burciaga's testimony with an e-mail from Burciaga's attorney advising the prosecutor that if the government offered Burciaga five years "he'd take it in a heartbeat." But defense counsel requested a mistrial, arguing the question was improper because the e-mail regarding plea negotiations was inadmissible under Fed. R. Evid. 410.

Seeking to salvage the trial, the district court asked the parties to propose a limiting instruction to cure any prejudice attributable to the prosecutor's question. Although the prosecutor worked with defense counsel in drafting the proposed instruction, the court eventually concluded the prejudice to Burciaga from the prosecutor's improper question could not be cured, and declared a mistrial.

Before Burciaga's second trial, he moved to dismiss the charge against him on double jeopardy grounds. The district court denied the motion, finding the prosecutor did not subjectively intend to force Burciaga to request a mistrial. Following his second trial, a jury convicted Burciaga of the single drug possession charge, and the district court sentenced him to a 20-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) based on a prior felony drug offense.[1] Burciaga appeals the district court's

---

[1] Burciaga challenges his 20-year sentence because the jury did not find the fact of his prior conviction beyond a reasonable doubt. Burciaga concedes this issue is controlled by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which held that that a prior felony conviction is a sentencing factor that need not be pleaded in the indictment or decided by a jury. *See also United States v. Apperson*, 441 F.3d 1162, 1213 (10th Cir. 2006). Indeed, Burciaga concedes he raises this issue only to preserve it for Supreme

denial of his motion to dismiss.

## DISCUSSION

The Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). It provides that no person "shall . . . for the same offence . . . be twice put in jeopardy of life or limb." U.S. Const. amend. V. Ordinarily, the Double Jeopardy Clause does not bar reprosecution when, as here, the first trial ended in a mistrial at the defendant's request, even if the mistrial was due to prosecutorial error. *United States v. Jorn*, 400 U.S. 470, 485 (1971). The government cannot, however, retry a defendant if it intentionally provoked the defendant to request a mistrial. *United States v. Valadez-Camarena*, 163 F.3d 1160, 1163 (10th Cir. 1998).

The standard for satisfying this exception to the general rule permitting reprosecution is "extremely exacting." *Earnest v. Dorsey*, 87 F.3d 1123, 1130 (10th Cir. 1996). The Double Jeopardy Clause bars retrial only "'where the prosecution intentionally goads the defense, not where the prosecution is mistaken, careless, or even harassing.'" *United States v. Tafoya*, 557 F.3d 1121, 1126 (10th Cir. 2009) (quoting *Valadez-Camarena*, 163 F.3d at 1163). Thus, it requires a court to make a finding of fact regarding the prosecutor's subjective intent; "[i]nferring the existence or nonexistence of intent from objective facts and circumstances." *Kennedy*, 456 U.S. at 675.[2]

_____

Court review.

[2] Burciaga argues this Court should not follow the subjective intent test adopted in *Kennedy*, which this Court applied in *Tafoya*, *Valadez-Camarena*, and other cases. This Court, however, is bound to follow *Kennedy* (a U.S. Supreme Court case) and *Tafoya* (a

4

Here, Burciaga challenges the district court's finding that the prosecutor did not intend to force a mistrial by mentioning Burciaga's attorney's attempt to engage in plea negotiations. We review this finding for clear error. *Tafoya*, 557 F.3d at 1126; *Valadez-Camarena*, 163 F.3d at 1163. A factual finding is clearly erroneous if it is without factual support in the record, or if, upon reviewing the record, we have "a definite and firm conviction" that the district court made a mistake. *Tafoya*, 557 F.3d at 1126. "'[W]e view the evidence in the light most favorable to the district court's ruling and must uphold any district court finding that is permissible in light of the evidence.'" *Id.* (quoting *Manning v. United States*, 146 F.3d 808, 813 (10th Cir. 1998)).

Burciaga first argues the prosecutor's question so clearly violated Federal Rule of Evidence 410 that the prosecutor, given his years of experience, would necessarily have known it would cause a mistrial. In support, Burciaga compares the facts of this case to those in *Tafoya.* There, the trial court granted a mistrial after a first-year federal prosecutor asked a government witness, "What happened after that?" and thereby elicited a response that violated the district court's pretrial limine order. *Id.* at 1123-25. The district court denied Tafoya's subsequent motion to dismiss the charge against him, and this court affirmed, relying on considerations that included the prosecutor's inexperience, the prosecutor's effort to craft a curative instruction, and the open-ended nature of the question. *Id.* at 1124, 1127.

As Burciaga points out, the prosecutor's question here clearly was more problematic than the seemingly innocuous, "What happened after that?" in *Tafoya*.

published decision of another panel of this Court). *See Tafoya*, 557 F.3d at 1129.

*Compare id.* at 1124. Indeed, the district court here described the prosecutor's question as "highly improper" and "careless," revealing "poor judgment" and "negligent disregard" for Burciaga's rights. Nevertheless, the district court found the prosecutor offered a sincere and researched (albeit incorrect) explanation for asking the question—to impeach Burciaga's prior testimony regarding plea negotiations—and the prosecutor worked diligently with defense counsel to propose a limiting instruction that would minimize any prejudice to Burciaga. We conclude the record supports the district court's finding that the nature of the question does not show the prosecutor intended to cause a mistrial. *See Kennedy*, 456 U.S. at 675-76 (prosecutorial conduct that could be viewed as harassment or overreaching, even if sufficient to justify mistrial, does not bar retrial absent intent by prosecutor to subvert the Double Jeopardy Clause's protections).

Next, Burciaga contends the timing of the prosecutor's question indicates the prosecutor intended to cause a mistrial in order to create a second opportunity to try the case. Specifically, Burciaga points out that the prosecutor's improper question came at the end of trial, after the prosecutor had seen Burciaga's evidence and observed his trial strategy, and after the prosecutor had time to reflect and strategize before asking the question. Burciaga also notes that after asking the question at issue, the prosecutor advised the district court, "I feel like I'm having to fight and claw to get my case presented in a way that is fair and so that it's—so that the right thing is in front of the jury." Burciaga contends this statement indicates the prosecutor believed the government's case was going poorly.

But as the district court found, the government's case was neither weak nor "going

6

poorly," and the prosecutor possessed an "objective basis for believing the government's case was strong and the defense case was weak." Specifically, the district court observed from Burciaga's first trial that "the Government's case itself [was] not weak" and "Defendant's own testimony did little to rebut it." It also noted that the motions in limine filed before Burciaga's second trial revealed the parties believed Burciaga's "testimony ultimately would have been favorable to the Government." The record supports the district court's observations and its finding that the government had no reason to sabotage the first trial.

Burciaga also suggests the prosecutor's intent to cause a mistrial can be inferred based on the fact that the government bolstered its case with new evidence at Burciaga's second trial. But as the district court noted, "the Government—like any reasonable attorney preparing for a trial in our adversary system—has consulted the evidence it has available to it and endeavored to use this evidence to its advantage." The government's effort to put on its strongest case does not undermine the district court's finding that the government had "no incentive to cause a mistrial" and its conclusion that the prosecutor did not subjectively intend to cause the mistrial here.

Finally, Burciaga argues the district court gave the government too much credit for defending the prosecutor's question and attempting to salvage the trial by assisting in drafting a proposed limiting instruction. However, as the district court found, such efforts can suggest the government did not intend to cause a mistrial. *See Tafoya*, 557 F.3d at 1127; *Valadez-Camarena*, 163 F.3d at 1163. Nevertheless, Burciaga urges this Court to speculate that the prosecutor, in a Machiavellian scheme to manufacture a second chance

7

to try the case, professed that his question was an innocent mistake and feigned interest in avoiding a mistrial, all to avoid a finding that he provoked the mistrial. Significantly, Burciaga provides us with no record citations to substantiate his conspiracy theory, stating only "[w]here the court saw efforts to salvage the trial, [Burciaga] sees further manipulation."

And therein lies the problem. The district court adopted one view of the facts—a view supported by the record—while Burciaga urges us to adopt another view. The bottom line is that when we view the evidence in the light most favorable to the district court's ruling, as we must, we find the district's view permissible in light of the evidence. Because we conclude Burciaga has failed to show that the district court clearly erred in finding the prosecutor did not intend to cause a mistrial, we affirm the district court's denial of Burciaga's motion to dismiss.

## CONCLUSION

The district court's judgment is affirmed.

ENTERED FOR THE COURT

Nancy L. Moritz,
Circuit Judge

8