UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark HIGGINS, Thaddeus Harrison,
and Orlando Potts, Defendants–
Appellants.

Nos. 95–1389, 95–1986 and 95–1987.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1996.

Decided Feb. 7, 1996.

[redacted]

[redacted]

Barry Rand Elden, Chief of Appeals, Eddie Stephens (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for the United States.

Mark Higgins, Federal Prison Camp, Oxford, WI, pro se.

James J. Cutrone, Steven Weinberg (argued), Chicago, IL, for Mark Higgins.

Steven J. Weinberg (argued), Chicago, IL, for Orlando Potts.

Before EASTERBROOK, ROVNER, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

[redacted] Of three persons jointly indicted for cocaine offenses, one pleaded guilty and two were convicted by a jury. Mark Higgins, who pleaded guilty, instructed his lawyer to appeal; counsel filed an *Anders* brief. As counsel concluded, Higgins lacks plausible appellate contentions. The unconditional plea surrendered any objection to the court's pretrial decisions; the judge followed Fed. R.Crim.P. 11 when taking the plea; and the judge was entitled to conclude that Higgins supervised at least one other person, leading to a two-level enhancement and a sentence of 121 months' imprisonment. We grant counsel's motion to withdraw and dismiss Higgins' appeal as frivolous. The other two appeals have only slightly more substance.

Thaddeus Harrison and Orlando Potts were tried twice. The first ended in a mistrial when the question "after the arrest of Thaddeus Harrison, what happened next?" led to this response by an agent of the DEA:

> I applied for and received—Mr. Harrison was arrested at the scene. We asked him if he wanted to cooperate, and he was *Mirandized.* He stated he didn't. Then we came back to our office ...

Before the agent could say more, Harrison's lawyer objected. At defendants' request, the district judge declared a mistrial, concluding that the agent's statement was impermissible under *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). Harrison and Potts then argued that a second trial would violate the fifth amendment's double jeopardy clause.

[redacted] Defendants who request a mistrial relinquish their entitlement to a verdict by the jury then impaneled and may not use the double jeopardy clause to avoid a second trial. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). But if the prosecutor deliberately introduces error in order to provoke a mistrial request and rescue a trial going badly, the Constitution treats matters as if the mistrial had been declared on the prosecutor's initiative. See *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982); *United States v. Oseni,* 996 F.2d 186 (7th Cir.1993); *United States v. Jozwiak,* 954 F.2d 458 (7th Cir.1992). The district judge held a hearing, received testimony from the agent, and concluded that the statement had not been designed to elicit a mistrial request. The second trial followed promptly. Defendants insist that retrial should not have occurred because the witness deliberately misbehaved; the United States relies on the district judge's findings about the agent's (and the prosecutor's) motives. We need not resolve the dispute, because there was no reason to end the first trial and it is therefore impossible to treat the agent's answer as a maneuver designed to yield a second, and better, shot at a conviction.

*Hale* and *Doyle* do not forbid all mention at trial of *Miranda* warnings and the defendant's response to them. They establish instead that silence following the receipt of *Miranda* warnings may not be used against a defendant. Silence may be no more than a response to the advice about one's rights—and it is inappropriate to promise a defendant that he may remain silent yet turn silence against him at trial. See *Brecht v. Abrahamson,* 507 U.S. 619, 627–30, 113 S.Ct. 1710, 1716–17, 123 L.Ed.2d 353 (1993) (discussing the basis of *Doyle*). A statement such as "I told the suspect that he could remain silent, and he did" does not ask the jury to infer guilt from silence. Even if it did, the right response would be corrective advice from the judge. *Greer v. Miller,* 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618

(1987), holds that such advice suffices even when the prosecutor asks a pointed question such as "Why didn't you tell [your current] story to anybody when you got arrested" (483 U.S. at 759, 107 S.Ct. at 3105)—which invites the inference that the defense is a recent fabrication, and that silence at arrest implies consciousness of guilt. The judge in *Greer* sustained an objection to the question and later told the jury to "disregard questions ... to which objections were sustained." *Ibid.* The Court concluded, first, that the prosecutor's question did not violate the due process clause because the prosecutor did not succeed in using the defendant's silence against him. The prosecutor *tried* to violate the rule of *Doyle* but failed, because the judge sustained the objection. *Id.* at 763–65, 107 S.Ct. at 3107–09. The court's instruction forestalled the jury from drawing the forbidden inference on its own. *Id.* at 765–66, 107 S.Ct. at 3108–09. Just so here; rather, so it could and should have been here. The judge cut off the agent's testimony. The next step should have been to inform the jury that Harrison was entitled to remain silent, and that the exercise of this right did not count against him. The trial should have continued. By demanding (and receiving) a mistrial when the trial readily could have been completed, the defendants surrendered any possible objection to retrial.

At least Harrison did. The agent's testimony did not concern Potts, whose lawyer originally opposed any mistrial. If Potts had maintained that position, he would have been entitled to conclude the trial and receive the verdict of the jury then impaneled. But after time for reflection Potts joined Harrison's motion for a mistrial. At oral argument Potts' lawyer asserted that he changed position only because the judge's body language and tone of voice implied that he did not want to sever the charges against Potts and Harrison. Nothing in the transcript suggests that the judge bullied Potts into relinquishing his right to wind things up at the trial then under way. A judicial invitation to do so is entirely proper, if the choice remains in the defendant's hands. Completion of the trial is the defendant's right, to assert or to surrender. The judge's reasons for preferring a joint trial, including conser-

vation of trial time and a reduction in the demands made on witnesses, are legitimate. Potts may have thought that his own interests lay in the same direction. Often one defendant seeks to point the finger at another, which may work best if the other party is there for the jury to convict. Examining defense strategy, to which we are not privy, would be inappropriate. It is enough that Potts explicitly joined Harrison's motion for a mistrial. Indeed, it would have been enough had Potts stood silently while Harrison argued for a mistrial. *United States v. Buljubasic,* 808 F.2d 1260, 1265–66 (7th Cir. 1987). A defendant is entitled to an opportunity to make his wishes known. When the opportunity comes he must seize it, and he must be prepared to accept the consequences.

Having received what he asked for, Potts cannot switch sides. Playing both sides of the street may be attractive for Potts but would be unfortunate for future defendants, for if a defendant who requested and got a mistrial could later avoid retrial by protesting that he didn't really want one, judges would be even more reluctant to grant mistrials than they are already. The double jeopardy clause gives the defendant a right to "get a verdict if he wants one and keep it if he gets it". *United States ex rel. Young v. Lane,* 768 F.2d 834, 837 (7th Cir.1985). "A right to obtain implies a right to relinquish. Defendants may choose whether to proceed with the first jury; if they elect not to, they have not been 'deprived' of any entitlement. To honor a choice is not to dishonor the underlying rule. The alternative to honoring the defendant's choice is forcing the parties to verdict in the first trial, then reversing the conviction and holding another trial—something neither side wants." *Jozwiak,* 954 F.2d at 459. Potts told the judge that he did not want a verdict from the first jury, and that is that.

█ The second trial began on October 27, 1994. Six or seven days earlier, the prosecutor had told defense counsel that a fingerprint found on a package of cocaine matched Harrison's recorded prints. Harrison's lawyer interviewed the fingerprint expert on October 22 and conducted a vigorous cross-

examination at trial—for the expert's initial report of his work on the packaging did not mention any prints, and the prosecutor had told defense counsel that no fingerprint evidence would be used. Now Harrison asserts that the belated disclosure of the fingerprint violates the due process clause. See *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Kyles v. Whitley,* —— U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

There is no constitutional right to pretrial discovery. *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211–12, 37 L.Ed.2d 82 (1973). Defendants are entitled to trials that distinguish the guilty from the innocent; many different procedures may lead to that end. A prosecutor must disclose information favorable to the defense, but disclosure need not precede trial. *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977); *United States v. Agurs,* 427 U.S. 97, 107–12, 96 S.Ct. 2392, 2399–402, 49 L.Ed.2d 342 (1976); *Buckley v. Fitzsimmons,* 20 F.3d 789, 797 (7th Cir. 1994); *United States v. Xheka,* 704 F.2d 974, 981 (7th Cir.1983); *United States v. Ziperstein,* 601 F.2d 281, 291 (7th Cir.1979). *Brady* thus is a disclosure rule, not a discovery rule. Disclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material. *United States v. Allain,* 671 F.2d 248, 255 (7th Cir.1982). Harrison got the news before trial; his lawyer interviewed the fingerprint expert and impeached the witness in cross-examination by pointing to the inconsistency between report and testimony. If counsel needed more time, she had only to ask; yet she did not seek a continuance. Nothing more need be said.

AFFIRMED