# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 06-2001, 06-2003, 06-2005 & 06-2108

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HARRY GILMORE, EDDIE BELL,
PATRICK BRAY, and TROY MARTIN,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 495—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED JUNE 5, 2006—DECIDED JULY 24, 2006

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* On September 8, 2004, a grand jury returned a seventy-two count indictment charging forty-five defendants with various drug trafficking and firearms offenses. Defendants Harry Gilmore, Eddie Bell, Patrick Bray, and Troy Martin were indicted for their participation in a drug trafficking conspiracy and were charged with violating 21 U.S.C. § 846 and 21 U.S.C. § 843(b). Bell was also indicted for distributing controlled substances, in violation of 21 U.S.C. § 841(a)(1). Defendants appeal the district court's denial of a motion to dismiss, which they filed on double jeopardy grounds. We

have jurisdiction over this interlocutory appeal pursuant to the collateral order exception to the final decision rule of 28 U.S.C. § 1291. *See Abney v. United States*, 431 U.S. 651, 662 (1977) (holding that denials of motions to dismiss claiming double jeopardy grounds are immediately appealable). Defendants contend that during the prosecutor's opening statement he intentionally violated the district court's motion *in limine* ruling in order to provoke defendants into moving for a mistrial. They argue that if the court does not dismiss the action, allowing the prosecution to continue would constitute double jeopardy under *Oregon v. Kennedy*, 456 U.S. 667 (1982).

Prior to the start of their trial, defendants filed a motion *in limine* to bar the government from referencing Troy Martin's incarceration. The district court conducted a hearing on the motion *in limine* on March 31, 2006. The government opposed the motion, reasoning that Martin's time in prison was intricately intertwined with evidence of the charged crimes. They explained that Martin established the street gang known as the Mafia Insane Vice Lords while he was in prison in the late 1980s and early 1990s and that several of his activities in prison consolidated the gang. According to the government, Martin consolidated control of several other divisions of the street gang known as the Vice Lords by working with different members of the Vice Lords as they entered and departed the Illinois state prison system. The government argued that Martin's actions in prison were "central to the story" of the charged conspiracy.

The intricately intertwined link notwithstanding, the district judge granted Martin's motion *in limine*, which barred the government from referencing Martin's incarceration. Instead, the judge suggested that the government should explain that Martin was simply living somewhere else at the time.

On Monday, April 3, 2006, a jury was selected over the course of the day and the trial began the following day. The prosecutor's opening statement lasted more than 90 minutes. During the opening statement, the prosecutor made three references to Martin's incarceration.[1] The remaining 13 references to Martin's whereabouts during the formation and development of the gang comported with the district court's pre-trial rulings.

Once the prosecutor completed his opening statement, defendant Martin moved for a mistrial based on the prosecutor's references to Martin's time in custody. Martin's counsel stated,

> Judge, if I could, I guess I should at this point move for a mistrial because counsel, unfortunately, in the opening statement on two occasions made reference to Mr. Martin being in jail and being released from jail in 1998. I am sure this was not intentional. I am not making any kind of accusation.

Co-defendants Patrick Bray and Eddie Bell joined in Martin's motion for a mistrial.

Immediately after Martin moved for a mistrial, the prosecutor responded by explaining to the court that the references were inadvertent and admitted that he made a mistake. The government strongly opposed the motion for a mistrial and argued that the government's mistake could be cured with a limiting instruction to the jury. The district court took the matter under advisement over a recess. Once the parties reconvened, the government again argued against a mistrial. After considering the arguments, the

---

[1] After the government's opening statement, the district court and both parties believed that the government had referenced Martin's incarceration only two times. Upon further review, the transcript revealed that the government referenced Martin's incarceration three times.

district judge granted the motion for a mistrial, reasoning that the trial was at a very early stage and she could not be sure how prejudicial the information might be to the defendant. The judge stressed, however, that she was listening to the opening statement and concluded that the prosecutor's mistake was inadvertent. Regardless, she was hesitant to go forward without knowing how prejudicial the information could be to the defendants. After the district court's ruling, co-defendant Harry Gilmore joined in the motion for a mistrial as well and the court granted his motion. The district court advised the parties that a new trial would start the following day.

That evening, the government filed a motion to reconsider the district court's evidentiary ruling barring any reference to the fact that Martin formed the Mafia Insane Vice Lords while he was in prison. Meanwhile, defendant Bray filed a motion to dismiss the indictment based on double jeopardy grounds. In his motion, Bray argued that the government's reference in its opening statement to Martin's incarceration was intentional and was made so as to provoke the defendants into moving for a mistrial. Bray's co-defendants joined in his motion to dismiss. Prior to the start of the second trial on April 5, 2006, the district court denied the motion to dismiss the indictments and reiterated her finding that the prosecutor's error was an inadvertent "slip of the tongue." She held that mistrials declared with the defendant's consent do not bar later prosecution. *United States v. Dinitz*, 424 U.S. 600, 607 (1976). Even without formal joinder, in this Circuit a defendant who fails to object to a mistrial gives his or her implied consent to it. *Camden v. Circuit Court*, 892 F.2d 610, 615 (7th Cir. 1989).

The district court issued a minute order denying the motion to dismiss the indictment on double jeopardy grounds since all four defendants consented to the mistrial by either moving for the mistrial themselves or joining in the motion after it was granted. The defendants indi-

cated their intent to file interlocutory appeals. All four defendants filed written notices of interlocutory appeal and the government moved to expedite the appeal due to the pending trial date, which the district judge set for August 21, 2006. We granted the government's motion and expedited the appeal.

We review a district court's denial of a motion to dismiss an indictment on double jeopardy grounds *de novo*. *United States v. Lippitt*, 180 F.3d 873, 876 n.4 (7th Cir. 1999); *United States v. Asher*, 96 F.3d 270, 273 (7th Cir. 1996). One of the main protections provided by the Double Jeopardy Clause of the Fifth Amendment is that a defendant has the right to have his trial completed by the first jury empaneled to try him. *Kennedy*, 456 U.S. at 673. Yet, it follows from that principle that if it is the defendant who requests a mistrial, then he foregoes his right to a verdict by the jury then empaneled, and the defendant cannot use the Double Jeopardy Clause to avoid a second trial. *United States v. Doyle*, 121 F.3d 1078, 1084 (7th Cir. 1997). The Court does acknowledge an exception to this rule for those cases where the prosecutor's conduct "was intended to provoke the defendant into moving for a mistrial." *Kennedy*, 456 U.S. at 679. The key question is whether the prosecutor deliberately introduced the error in order to provoke the defendant into moving for a mistrial, and thereby rescuing a trial going badly. *United States v. Higgins*, 75 F.3d 332, 333 (7th Cir. 1996). If that is the case, "the Constitution treats matters as if the mistrial had been declared on the prosecutor's initiative," and bars retrial. *Id.*

In this case, the district judge concluded based on her observation of the government's opening statement that the prosecutor made an inadvertent mistake. In a 90-minute opening statement, the prosecutor's references to Martin's whereabouts comported with the district court's ruling 13 times. The judge found that the prosecutor's references to Martin's incarceration were "slips of the tongue." She held

that the prosecutor's conduct was not intended for the purpose of causing a mistrial.

The initial perception of the opening statement shared by the district court and defendants was that the prosecutor's mistakes were unintentional. Bray's counsel even stated when moving for a mistrial: "I am sure this was not intentional. I am not making any kind of accusation." Before this Court, however, defendants argue that the government's persistent motions urging the district court to reconsider its evidentiary ruling on Martin's incarceration illustrate the prosecutor's true intent when he violated the district judge's ruling and further demonstrate the prosecutor's attempt to rescue a trial going badly. But the prosecutor's vigorous advocacy for his case does not translate into a finding that he intentionally goaded defendants into moving for a mistrial.

Intent is a critical element to understand when determining if a prosecutor's actions intentionally triggered the mistrial. As *Oseni* explains, "[i]f after a criminal trial begins the government decides that the case is going badly for it, it cannot dismiss the case and reprosecute the defendant . . . . it cannot engage in trial misconduct that is intended to and does precipitate a successful motion for mistrial by the defendant." *United States v. Oseni*, 996 F.2d 186, 187-88 (7th Cir. 1993) (citing *Kennedy*, 456 U.S. at 676, 679). But we held in *Oseni* that the element of intent is critical and easily misinterpreted, "[t]he fact that the government blunders at trial and the blunder precipitates a successful motion for a mistrial does not bar a retrial." *Oseni*, 996 F.2d at 188. Unless the prosecutor is purposefully "trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows he is acting improperly, provided that his aim is to get a conviction." *Id.* (citing *Kennedy*, 456 U.S. at 675-76).

Here the district judge carefully considered the prosecutor's conduct. The prosecutor explained that he made an

inadvertent mistake, and based on the district judge's own observation of the prosecutor's demeanor, speech pattern, and flow during his opening statement, the district judge also concluded it was an inadvertent error. While the prosecutor wanted the evidentiary ruling on Martin's incarceration to go the government's way, he did not want to abort the trial. In fact, he vigorously argued against the defendants' motion for mistrial, reasoning that the mistake could be cured with a limiting instruction to the jury.

One way for a district court to resolve whether a prosecutor intentionally provoked the defendant to move for a mistrial is to hold an evidentiary hearing. *Oseni*, 996 F.2d 186, 189 (7th Cir. 1993). In this case, the district court conducted an informal hearing and accepted argument from both the prosecution and defense on the motion for a mistrial. She did not, however, conduct a formal evidentiary hearing as *Oseni* allows. *Id.* But an evidentiary hearing is not a requirement. *United States v. Jozwiak*, 954 F.2d 458, 460 (7th Cir. 1992). Rather, the evidentiary hearing serves as a backstop for the district judge if she is not, or a reasonable judge would not be, satisfied with the prosecutor's explanation. *See Oseni*, 996 F.2d at 189.

Here, the district judge was satisfied not only with the prosecutor's explanation, but also satisfied by what she witnessed in overseeing the trial. Since she was satisfied with the explanation, there was no need to hold an evidentiary hearing to probe the prosecutor's intent. We find that the prosecutor's conduct in the trial was not intended to goad the defendants into moving for a mistrial. As a result, the Double Jeopardy Clause of the Fifth Amendment does not bar retrying the defendants.

The government's motion to reconsider the ruling on the motion *in limine* remains pending in the district court. Of course, as the concurrence points out, we cannot order

the district court to reconsider its ruling. Given how intricately intertwined Martin's activities in prison were to the charged conspiracy and the multiple witnesses who planned to testify concerning events that transpired while Martin was incarcerated, we are confident that the district court will carefully consider the pending motion. The government argues that Martin began the gang from prison and exercised control over the gang members from within prison. It also contends the gang provided the structure and organization for drug distribution, and that Martin's efforts from prison allowed him to assume control of a complex drug conspiracy immediately upon his release from prison.

Even if forewarned, lay witnesses could easily fall victim to what the district court deemed an inadvertent "slip of the tongue" that befell the trained prosecutor on three occasions in one opening statement. For example, the government alleges that in the months before Martin's release from prison, he directed a gang member to visit Martin while in prison, prepare gang territory for Martin's return, collect a "street tax" from drug operators, and give the tax to Martin's wife while Martin was incarcerated. Recounting these and other alleged instances without reference to Martin's incarceration will undoubtedly prove difficult for lay witnesses—and may indeed be an unwieldy solution—and, if unsuccessful, could result in another defense motion for a mistrial. District courts often use limiting instructions to reduce the possibility that unfair prejudice might result from the admission of certain evidence, such as a defendant's prior conviction. Of course, the district court may reject the government's motion to reconsider, but if the district court decides to allow witnesses to mention the fact of Martin's incarceration, we see no reason that the jury would need to hear such details as the reason for Martin's incarceration or its length.

The district court is AFFIRMED.

ROVNER, *Circuit Judge*, concurring.  I concur in all but the final two paragraphs of the majority's opinion. I would not address the merits of the district court's discretionary ruling on the motion *in limine* because that issue was not raised by the parties and was not briefed. "Under ordinary principles of the adversary system, we do not reach out to decide questions not before us." *Bethea v. Robert J. Adams & Assoc.*, 352 F.3d 1125, 1130-31 (7th Cir. 2003) (Cudahy, J., concurring in part and dissenting in part) (citing Adam A. Milani & Michael R. Smith, "Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts," 69 Tenn. L. Rev. 245, 273 (2002) ("Party identification of the issues is at the core of th[e adversary] system and '[t]he adversary process is no more starkly challenged than when a court decides an issue not raised, for it actually decides something other than what the parties asked it to decide.' ")). Therefore, although I might have ruled differently under the limited facts as we know them in this interlocutory appeal, I am uncomfortable directing the district court to reconsider the ruling that prevented the prosecution from revealing Martin's imprisonment. I see no reason to address an issue that was neither briefed, argued, nor appealed.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*