In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2584

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL CORNELIUS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06-CR-264—**Rudolph T. Randa**, *Judge.*

ARGUED APRIL 13, 2010—DECIDED OCTOBER 15, 2010

Before WILLIAMS, SYKES, and TINDER, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* In June 2005, Michael Cornelius was charged in Wisconsin state court with possession with intent to distribute a controlled substance. Two speedy trial demands and seven scheduled trial dates later, his state case was dismissed on October 16, 2006. The very next day, Cornelius was indicted federally for possession with intent to distribute more than five grams of crack cocaine, beginning his

odyssey through the federal system. On March 11, 2009, after more delays and two more mistrials, Cornelius moved to dismiss his indictment on Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, constitutional speedy trial, and double jeopardy grounds. His speedy trial-based claims were premised on the lengthy delays in the government's prosecution of the case against him. His double jeopardy claim asserted that during his second trial, the prosecutor had goaded him into moving for a mistrial in order to rescue a case that was going badly in order to get another shot at prosecuting him. The district court denied Cornelius's motion on constitutional speedy trial and double jeopardy grounds, but granted his motion under the Speedy Trial Act, dismissing the indictment without prejudice. Cornelius, who was reindicted on June 23, 2009, appeals all three aspects of the district court's ruling. He appeals the denial of his motion to dismiss on double jeopardy and constitutional speedy trial grounds, and appeals the dismissal on Speedy Trial Act grounds, arguing that the dismissal should have been with prejudice, not without.

We conclude that we lack jurisdiction to hear Cornelius's appeal of the district court's speedy trial rulings at this juncture because his prosecution continues. We do have jurisdiction to hear his double jeopardy appeal, however, and we vacate the district court's ruling on that issue. We find that the district court erred by not holding a evidentiary hearing before making a determination as to whether the prosecutor intentionally tried to trigger a mistrial, and remand so that such a hearing can occur.

## I. BACKGROUND

On June 22, 2005, Milwaukee police, acting on information from a confidential informant, arrested Cornelius, a Latin Kings gang member, after pulling over the car he was driving in a McDonald's parking lot. Police found a marijuana cigarette in the car's ashtray and approximately 6.67 grams of cocaine base in an area under the dashboard where Cornelius had been observed leaning forward as police approached. Also in the car was Cornelius's acquaintance, Baldomero Castillo, another Latin Kings gang member. Later that day, Castillo's residence was searched pursuant to a search warrant and additional cocaine was found. Police also found a firearm, a scale, marijuana, and gang paraphernalia on the premises. Cornelius was charged in Milwaukee County Circuit Court with possession of a controlled substance with intent to deliver. But after more than a year, two speedy trial motions and seven scheduled trial dates, his case was dismissed on October 16, 2006.

The next day, on October 17, 2006, Cornelius was indicted federally for the same conduct, along with Castillo. Count I of the indictment charged Cornelius with possession with intent to distribute more than five grams of crack cocaine (the cocaine found in the automobile), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count II charged Castillo with the same offense, related to the drugs that had been found at the residence.

### A.  The First Trial

A jury trial began against both Cornelius and Castillo on July 30, 2007. On the second day, a mistrial was declared when a juror was observed dozing off during the proceedings. Trial was rescheduled for October. In the meantime, on August 7, 2007, the government filed a superseding indictment (the "First Superseding Indictment"). The First Superseding Indictment added a conspiracy charge against both men: the new Count I charged Cornelius and Castillo with conspiring to distribute and possess with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. Count II charged them with possessing with intent to distribute five or more grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).[1]

### B.  The Second Trial

Cornelius and Castillo's second jury trial began on October 23, 2007. In order to implicate Cornelius on the

---

[1]  Cornelius and Castillo moved to dismiss the First Superseding Indictment on the basis of vindictive prosecution. On September 7, 2007, the magistrate judge found a colorable basis that the superseding indictment was the result of prosecutorial vindictiveness, *see United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006), and granted the defendants' requests to produce grand jury transcripts and statements of cooperating witnesses. The magistrate judge ultimately concluded that the facts of the case did not indicate vindictiveness on the part of the government, however, and recommended denying the motion to dismiss. The district judge adopted that recommendation.

new conspiracy charge, the government sought to intro-
duce testimony from Hugo Delportillo, another member
of the Latin Kings who supplied cocaine to Castillo.
Delportillo would testify, as he had in the grand jury,
that Castillo had told him that Cornelius had also
supplied Castillo with cocaine. Castillo's statement,
through Delportillo, was essentially the government's
only evidence against Cornelius on the conspiracy
charge—the government admitted that without it, the
charge would not survive a Rule 29 motion to dismiss.

At trial, Cornelius informed the court that he intended
to impeach Castillo's statement to Delportillo by intro-
ducing Castillo's prior convictions pursuant to Federal
Rule of Evidence 806.[2] Castillo had already informed
the court that he would not testify at trial, therefore his
prior convictions would have been inadmissible. As a
result, depending on how the court ruled, Delportillo's
testimony would be prejudicial either to Castillo or to
Cornelius. If the convictions were let in, Castillo would
be prejudiced; if they were not allowed, Cornelius

---

[2] Rule 806 provides "[w]hen a hearsay statement, or a statement
defined in Rule 801(d)(2)(C), (D), or (E), has been admitted
in evidence, the credibility of the declarant may be attacked
and if attacked may be supported, by any evidence which
would be admissible for those purposes if declarant had
testified as a witness." Castillo's prior convictions would
be admissible under Rule 806 because his statement to
Delportillo regarding Cornelius being a supplier of cocaine
was a Rule 801(d)(2)(E) statement by a conspirator of a party
in furtherance of the conspiracy.

would be prejudiced by having been denied the ability to impeach the declarant. The district judge took the issue under advisement and indicated that it would render a decision before Delportillo actually testified. A jury was empaneled and sworn, and the trial commenced.

On the third day of trial, when it was time for Delportillo to take the stand, the district court revisited the issue and ruled that Delportillo could testify, but not as to anything that Castillo told him about Cornelius being a supplier of cocaine. A brief recess was taken, during which time the government represents that it explained the ruling to Delportillo. The jury was then brought in, Delportillo was sworn, and he began to give his testimony. Delportillo testified that he was a member of the Latin Kings and that he knew Castillo and Cornelius, both of whom he identified in the courtroom. He testified that he had supplied Castillo with cocaine on a number of occasions, stating that he provided him with "two ounces here and there." The government pressed further on the topic, and the following exchange occurred:

GOVERNMENT: Do you know if Baldomero Castillo had other sources of cocaine besides you?

CASTILLO'S COUNSEL: I'm going to object. That calls for speculation.

GOVERNMENT: If you know.

THE COURT: No. He may answer.

GOVERNMENT: Do you know if Baldomero Castillo had—

> THE COURT: The question is whether or not there were—if he knows of any other sources.

> DELPORTILLO: If I knew where Baldo could get some?

> GOVERNMENT: You know any other people who were sources for cocaine for Baldomero Castillo?

> CORNELIUS'S COUNSEL: I'm going to object, your Honor. And I'm going to ask for a sidebar.

Despite a question from the government that appeared likely to elicit a response from Delportillo about Cornelius being a source of supply to Castillo—testimony the court had prohibited—the district judge denied Cornelius's objection and request for a sidebar, and allowed questioning to continue. In so ruling, the district judge stated "I assume the prosecutor knows the question he is asking," indicating that the court likely assumed that the government could not actually be seeking the prohibited answer from Delportillo. Questioning continued, and an exchange occurred that triggered yet another mistrial and set into motion the double jeopardy issue that is now before us:

> DELPORTILLO: What was the question again?

> **GOVERNMENT: Do you know if Baldomero Castillo has any other sources and—had other sources in supply of cocaine besides you?**

> **DELPORTILLO: Yeah, Mike [Cornelius].**

> CORNELIUS'S COUNSEL: Your Honor, I'm going to ask for a sidebar, please?

(Emphasis added). The jury was excused, and the following discussion took place:

> CORNELIUS'S COUNSEL: Judge, on behalf of Mr. Cornelius, I'm going to move this Court for a mistrial reserving my right to argue for dismissal. But I think at this point there—information that we went to what I consider to be extraordinary lengths to prevent the jury from hearing has been heard during the government's questioning of the witness Mr. Delportillo.
>
> There has been no evidence of any conspiracy up to this point. The only source of Mr. Delportillo's knowledge that Mr. Cornelius supplied any drugs to Mr. Castillo as we went over ad nauseum was Mr. Castillo's purported statements to Mr. Delportillo.
>
> I have been given no other information that would permit any other conclusion that that is the source of Mr. Delportillo's knowledge that Mike is Mr. Castillo's source for cocaine. And so we are left in the unenviable position and one that I tried to avoid with as much dispatch as I am capable of. And my efforts notwithstanding, this jury has been polluted with this statement by this government witness that my client is the source of Mr. Castillo's cocaine.
>
> . . . .
>
> And so there is—there is nothing that I can imagine can be done to cure the tremendous amount of prejudice that is occasioned by such a remark. . . .

the cat has been let out of the bag, to borrow a phrase from [government counsel] in that there is no way, out of fairness to Mr. Cornelius, that Mr. Cornelius can have a fair trial going forward.

And having never been confronted with this issue before in my career . . . I would merely at this point reserve my right to dismiss—if the Court grants my motion for a mistrial . . . . I reserve the right to move for a dismissal in the event that the government attempts to reprosecute Mr. Cornelius.

Castillo's counsel joined in Cornelius's request for mistrial, and made the following comments highlighting how strange it was for the government to even ask Delportillo about other sources in light of the court's evidentiary ruling:

CASTILLO'S COUNSEL: When we were at sidebar, the question came up, well, what was the relevance to ask this gentleman if there were any other sources of his—of his drugs and so forth when really there were only two people here. I mean the only—the only reasonable answer or rational answer would be that that testimony was being elicited to get to or get an answer that Michael [Cornelius] was the other individual. So I guess I'll leave the Court with that.

The prosecutor then advanced his explanation for what had occurred:

GOVERNMENT: Judge, I would ask that the testimony of—the last answer of Mr. Delportillo

be struck as nonresponsive, ask that the Court give a curative instruction to the jury at this time.

I do note that Mr. Delportillo was prepped previously to give testimony consistent with his grand jury testimony. I did have—I took the opportunity, the bulk of the opportunity I asked for the Court—for—after the Court made its ruling was to go back and prep the witness and to make sure that he understood the parameters.

And one of the preparatory questions was if somebody asks you what time it is, you answer yes or no. You don't tell me what time it is. You wait for someone to ask you what time it is. And I thought my instructions were clear to him.

Unfortunately, the question was asked do you know of any other sources. And he answered with the question—with the answer to that anticipating what he thought maybe my next question was going to be but it wasn't and answered that question. I think that the—a curative instruction and a motion to strike based on that testimony would be sufficient and the trial may proceed.

The prosecutor then stated that without Delportillo's testimony about Cornelius, the conspiracy charge against him would not survive a Rule 29 motion to dismiss, effectively conceding that the testimony was the only evidence the government had against Cornelius for that particular count. Counsel for both Cornelius and Castillo also stated their objections to the government's proposal for a motion to strike, arguing that the testimony

was simply too prejudicial. The district judge then weighed in:

> THE COURT: Well, the Court issued a ruling relative to the testimony of Mr. Delportillo. And that was a ruling which, as we all know, brought into play competing rights. The Court is not going to rehash its reasoning or the reasoning that it supplied for those rules or that ruling.
>
> But the long and the short of it was that Mr. Delportillo could not use the information that he had garnered from Mr. Castillo about Mr. Cornelius' involvement as a source of cocaine, provider of cocaine or user, whatever.
>
> And with that ruling, as we all know, Mr. Delportillo was briefed and counseled as [government counsel] has indicated. And when the question came up, are there any other or did Mr. Castillo have any other sources of cocaine, there was an objection and a request for sidebar.
>
> And the Court would have normally granted a sidebar in that case. So perhaps given the answer, the Court could be held responsible for that answer. But the question, did Mr. Castillo have any other sources of cocaine, after that counseling and briefing and consultation, in the Court's mind, was so latent with danger that it was assumed by the Court that the counseled witness and directed witness would in no way, shape or form do what the government has now indicated he did.

And that was to anticipate the answer to the
logical next question. And the answer to the ques-
tion, as [government counsel] said he counseled
Mr. Delportillo on, was yes. But Mr. Delportillo
went further. He said mentally of course, yes,
Mike. Identifying—there's only one Mike in this
courtroom related to that testimony and that's
Mr. Cornelius.

The court then rejected the prosecutor's suggestion
that a motion to strike and limiting instruction was suf-
ficient to remedy the problem, and granted Cornelius's
motion for a mistrial. The court denied the motion for
dismissal, however, reasoning that such a motion was
premature and should be addressed when and if the
government decided to retry Cornelius. After the
mistrial, the government moved to sever the two defen-
dants' trials, presumably to avoid the problems it had
encountered in the second trial. The trials were severed
on March 7, 2008, and the government sought to try
Castillo first. Shortly thereafter, Castillo decided to plead
guilty and entered a plea on April 30, 2008. He was sen-
tenced on July 29, 2008.

### C. Cornelius's Motion to Dismiss

Following the mistrial and severance, nothing tran-
spired in the case against Cornelius for nearly a year. The
parties blame each other for this, but the result was
that nothing occurred until February 24, 2009, when the
district judge referred Cornelius's case to a magistrate

judge.[3] Cornelius then moved to dismiss the super-
seding indictment against him on three grounds. First,
relying on the rule announced in *Oregon v. Kennedy*, 456
U.S. 667, 679 (1982), Cornelius argued that re-prosecuting
him violated his Fifth Amendment right to be free
from double jeopardy, because the government had
intentionally provoked him into moving for a mistrial by
questioning Delportillo as it had. Cornelius requested
an evidentiary hearing in connection with his double
jeopardy claim, in order "to determine the government's
intent" in asking Delportillo the question that it did, and
to learn precisely what instructions the government
gave to Delportillo before his testimony. Cornelius
argued that an evidentiary hearing was necessary
because depending on the testimony that was elicited, the
court "could conclude that the government engaged
in conduct designed to provoke the mistrial." Second,
Cornelius claimed that the numerous delays in his pros-
ecution violated the Speedy Trial Act, 18 U.S.C. § 3161
*et seq.* Finally, Cornelius asserted that his prosecution
violated his Sixth Amendment-based right to a speedy
trial for the same reasons.

The government responded in its brief that it was not
its intent to trigger a mistrial through its questioning,
and blamed the offending "Yeah, Mike" answer on

---

[3] Because we do not reach the merits of Cornelius's constitu-
tional or statutory speedy trial-based appeals, *see infra*, we do
not set out the details of the fits and starts of Cornelius's
prosecution, but we note that the district court concluded
that the blame for much of the delay falls with the government.

Delportillo. The government claimed that Delportillo had been instructed not to testify about conversations with Castillo about Cornelius, but did so anyway after becoming "confused by several objections and rulings prior to answering the question." With regard to why the question about other sources was asked at all, the government claimed it was in order to "argue by inference in closing argument that Mr. Castillo and Mr. Cornelius were working together." The government argued that it gained no strategic advantage from the mistrial, and claimed that the trial was not going badly for it at the time that Delportillo testified. The government asked the court to "accept the government's explanation without the need for an evidentiary hearing." Cornelius countered in his reply brief that the government would gain a "tremendous strategic advantage" by re-trying Cornelius after the mistrial. Following its successful motion to sever Cornelius and Castillo, the government would be able to introduce the previously inadmissible testimony from Delportillo regarding Castillo's statement.

On April 3, 2009, the magistrate judge issued his report and recommendation on Cornelius's motion to dismiss, which set forth the basis for the decision that Cornelius appeals here. The magistrate recommended denying dismissal on double jeopardy grounds, finding that the objective facts and circumstances did not indicate that the government had intentionally engaged in actions to goad Cornelius into moving for a mistrial. The magistrate denied Cornelius's request for an evidentiary hearing, noting that Cornelius had failed to

comply with a local criminal rule in requesting it,[4] and that one was not required in any event because a determination could be made in this case based on the objective facts and circumstances. *See Kennedy*, 456 U.S. at 675. The magistrate judge found that while the case was "clearly . . . going badly for the government" after the court issued its evidentiary ruling limiting Delportillo's testimony, it appeared that Delportillo's answer was a spontaneous one that was not in response to any inappropriate question. The magistrate reasoned that the government's literal question—"Do you know if Baldomero Castillo . . . had other sources in supply of cocaine besides you?"—was a yes-or-no question, and that it was Delportillo who went beyond the scope of the question by answering "Yeah, Mike." Notably, the magistrate did not address the question of why the prosecutor asked the question in the first place. The magistrate further noted that the prosecutor requested a curative instruction, indicating that the gov-

---

[4] Eastern District of Wisconsin Criminal Local Rule 12.3 states that a party requesting an evidentiary hearing must provide a short, plain statement of the issue and grounds for relief, and after conferring with the nonmovant, describe the disputed facts at issue that the movant believes warrant a hearing. Cornelius requested an evidentiary hearing in his motion to dismiss, but judging from the magistrate's conclusion, did not follow through on all of Local Rule 12.3's requirements. The government made no mention of Rule 12.3 in its opposition to the motion to dismiss, instead arguing that a hearing was not necessary and requesting "that the motion for an evidentiary hearing be denied."

ernment was "content to lose on the conspiracy charge." Based on this, the magistrate concluded that after reviewing the record, he was "unable to say that there is evidence sufficient to permit a conclusion that the events that led to Cornelius requesting a mistrial were intentionally orchestrated by the government to provoke that result."

The magistrate then addressed Cornelius's motion to dismiss on Speedy Trial Act grounds. The magistrate engaged in a thorough examination of the long history of Cornelius's prosecution and found that the delay between the date he and Castillo were severed and the date that Cornelius moved to dismiss the indictment—436 days, or 366 days beyond the 70-day deadline, 18 U.S.C. § 3161(e)—constituted a "clear violation" of the Speedy Trial Act warranting dismissal of the indictment. The magistrate then turned to the question of whether the dismissal should be with or without prejudice. *See* 18 U.S.C. § 3162(a)(2) (setting forth factors to be considered in that determination). He found that the seriousness of the charges against Cornelius weighed in favor of a dismissal without prejudice. The magistrate also found while "extraordinary negligence" led to the "inexcusable and exceptional" delay, he saw no evidence of bad faith on the part of the government. He concluded there was "sufficient neglect on all sides," also weighing in favor of a dismissal without prejudice. The magistrate also observed that during the nearly 2½ years that federal charges had been pending against Cornelius, he had been free on bond and had presented no evidence

that he was prejudiced as a result of the delay. Taking all of these factors together, the magistrate recommended that while the question was a close call, the dismissal should be without prejudice.

The magistrate judge then turned to Cornelius's final basis for his motion, violation of his Sixth Amendment-based right to a speedy trial. The magistrate examined the four factors relevant to that inquiry: the length of the delay, whether the government was more to blame for the delay, whether Cornelius had asserted his speedy trial right, and whether there was prejudice because of the delay. *See United States v. Wanigasinghe*, 545 F.3d 595, 597 (7th Cir. 2008). Examining these factors, the magistrate concluded that Cornelius's constitutional right to a speedy trial had not been violated. The magistrate reasoned that while the 2½-year delay was clearly lengthy and largely attributable to inaction by the government, Cornelius had for his part not regularly demanded a speedy trial during that time and had not demonstrated sufficient prejudice from the delay. The magistrate recommended denying Cornelius's motion to dismiss on this ground.

Cornelius filed timely written objections to the magistrate's recommendation. Cornelius reiterated his request for an evidentiary hearing, arguing that a hearing was necessary in order to learn what exactly the government told Delportillo before he took the stand. On June 16, 2009, the district court adopted the magistrate judge's recommendations and reasoning supporting the recommendations, and dismissed the indictment against

Cornelius without prejudice pursuant to the Speedy Trial Act. Cornelius timely appealed.[5]

## II. ANALYSIS

Cornelius appeals the district court's ruling on his motion to dismiss, challenging denial of his motion on double jeopardy and constitutional speedy trial grounds, and arguing that the Speedy Trial Act dismissal should have been with prejudice, not without.

We address Cornelius's statutory and constitutional speedy trial claims first, since we lack jurisdiction to hear those arguments. As to Cornelius's double jeopardy claim, we vacate the district court's ruling and remand with instructions to hold an evidentiary hearing to engage in a more thorough analysis of the facts sur-

---

[5] The day after Cornelius appealed, the government indicted him for a third time. The new indictment (which is the one Cornelius currently faces and is not the subject of this appeal) includes the two counts from the First Superseding Indictment, but adds a new count charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). That count alleges that Cornelius possessed a weapon "on or about February 11, 2007"—which we note is a date six months before the government filed the *previous* indictment against Cornelius. Unless the government was unaware of the facts predicating the gun charge until much later, or would have been unable to prove up the charge at the time it filed the First Superseding Indictment, it strikes us as somewhat odd that the charge was not added until now.

rounding what the prosecutor's intent was in his questioning of Delportillo. We do not believe that the circumstances of what occurred during the trial, or the government's informal explanation, without a such hearing, support the conclusion that the district court reached and that an evidentiary hearing is necessary. The government's explanation raises as many questions for us as it answers, questions that an evidentiary hearing can address.

**A. Cornelius's Constitutional and Statutory Speedy Trial Claims**

We lack subject matter jurisdiction to hear Cornelius's appeals of the district court's rulings on his constitutional and statutory speedy trial claims, because his prosecution is ongoing. Neither ruling is currently a final decision appealable under 28 U.S.C. § 1291, nor does either fit within the collateral order doctrine. *See generally Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).

First, Cornelius cannot appeal the district court's ruling on his Sixth Amendment-based speedy trial claim at this time, because a pretrial order denying a motion to dismiss on Sixth Amendment speedy trial grounds does not constitute a final decision appealable before final judgment is entered. *United States v. MacDonald*, 435 U.S. 850, 856-57 (1978); *see also United States v. Daniels*, 848 F.2d 758, 759 (7th Cir. 1988). Cornelius argues that the fact that the government has filed a third indictment somehow changes this analysis, but it does not. In

*Parr v. United States*, 351 U.S. 513, 517 (1953), the Supreme Court held that the issuance of a subsequent indictment does not convert a dismissal order on the prior indictment into a final decision, because the prosecution is ongoing. The Court held that "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Id.* at 518. This reasoning applies here. Cornelius must wait until final judgment is entered in his case before he can appeal this portion of the district court's ruling.

Nor can Cornelius raise an interlocutory appeal of the district court's ruling that his Speedy Trial Act dismissal be without prejudice. While we have not squarely addressed the question ourselves, many other circuits have held that dismissal of an indictment without prejudice under the Speedy Trial Act is not immediately appealable. *See, e.g.*, *United States v. Reale*, 834 F.2d 281, 282 (2d Cir. 1987); *United States v. Kuper*, 522 F.3d 302, 303-04 (3d Cir. 2008); *United States v. Jones*, 887 F.2d 492, 493 n.2 (4th Cir. 1989); *United States v. Stephens*, 511 F.3d 492, 493 (5th Cir. 2007) (per curiam); *United States v. Bratcher*, 833 F.2d 69, 72 (6th Cir. 1987); *United States v. Holub*, 944 F.2d 441, 442 (8th Cir. 1991); *United States v. Ford*, 961 F.2d 150, 151 (9th Cir. 1992) (per curiam); *United States v. Tsosie*, 966 F.2d 1357, 1361-62 (10th Cir. 1992); *United States v. Kelley*, 849 F.2d 1395, 1397 (11th Cir. 1988). While it "may seem inefficient" not to allow Cornelius to appeal a Speedy Trial Act ruling at this juncture when it could "potentially result in a dismissal of the indictment and avoidance of trial," *United States v. Montoya*, 827 F.2d 143, 147 n.2 (7th Cir. 1987), such a ruling

does not constitute a final decision within the meaning of 28 U.S.C. § 1291, nor does it fit within the collateral order doctrine. *See, e.g., Kuper*, 522 F.3d at 303; *Tsosie*, 966 F.2d at 1361-62. We join our sister circuits and hold that a ruling on a motion to dismiss under the Speedy Trial Act is not final decision that can be appealed on an interlocutory basis.

## B. Double Jeopardy

Cornelius also appeals the district court's denial of his motion to dismiss on double jeopardy grounds. Unlike the statutory and constitutional speedy trial rulings, the district court's double jeopardy ruling is immediately reviewable, and we therefore have jurisdiction over this aspect of Cornelius's appeal. *Abney v. United States*, 431 U.S. 651, 662 (1977); *United States v. Asher*, 96 F.3d 270, 272 (7th Cir. 1996).

Cornelius challenges the district court's conclusion that the government did not intend to provoke him into moving for a mistrial through its questioning of Hugo Delportillo. He characterizes the government's question to Delportillo about other sources of cocaine as a "mean-ingless, but dangerous" one in light of the evidentiary ruling the district court had issued. He argues that once the district court ruled that Delportillo could not testify about Castillo's statement that Cornelius was a source of cocaine, the government realized its conspiracy case against Cornelius would not survive a Rule 29 motion to dismiss. In Cornelius's version of events, the govern-ment, which had extensively prepared Delportillo to

testify that Castillo had identified Cornelius as a source, still proceeded to ask him the "needless" question in order to provoke the offending response that would predicate a mistrial. Cornelius argues that in light of the court's ruling, there was simply no reason for the government to ask Delportillo whether he knew if Castillo had other sources of cocaine.

The government argues that the facts and circumstances show there was no intent on the part of the prosecutor to trigger a mistrial. Like it did before the district court, the government pins the blame on Delportillo. The government points out that the literal question the prosecutor asked was a yes-or-no one, and claims that it was only due to Delportillo's confusion that he "went beyond" the scope of the question and identified Cornelius. At one point in its brief the government concedes that "perhaps in hindsight the prosecutor should have . . . not asked the question at all," but argues nonetheless that the question was warranted because the government wanted to argue "by inference" that Castillo and Cornelius were working together. The government asserts that it had no reason to try and orchestrate a mistrial because its case was not going badly, and that it was content to proceed and try to prevail on only the possession count against Cornelius.

We review the district court's double jeopardy ruling de novo, but defer to the district court's factual findings. *United States v. Gilmore*, 454 F.3d 725, 729 (7th Cir. 2006); *United States v. Ray*, 238 F.3d 828, 835 (7th Cir. 2001). We review the district court's decision not to

grant an evidentiary hearing for abuse of discretion. *See United States v. Anderson*, 288 F.3d 335, 337 (7th Cir. 2002); *see United States v. Tafoya*, 557 F.3d 1121, 1128 (10th Cir. 2009).

### 1.   The Double Jeopardy Clause and the *Oregon v. Kennedy* Rule

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It protects a defendant against repeated prosecutions or multiple punishments for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606 (1976). "One of the main and most-frequently cited rationales behind the protections in the Double Jeopardy Clause is that a defendant has the right to have his trial completed by the first jury empaneled to try him." *United States v. Doyle*, 121 F.3d 1078, 1083-84 (7th Cir. 1997). The Double Jeopardy Clause generally does not bar retrial, however, when a mistrial has been granted at the request of the defendant. *Id.* at 1084; *United States v. Higgins*, 75 F.3d 332, 333 (7th Cir. 1996) ("Defendants who request a mistrial . . . may not use the double jeopardy clause to avoid a second trial.").

In *Oregon v. Kennedy*, the Supreme Court announced an exception to this general rule, holding that double jeopardy does bar reprosecution if the government has engaged in conduct giving rise to the mistrial request that

was "intended to provoke the defendant into moving for a mistrial." 456 U.S. at 679. If the government has done so, "the Constitution treats matters as if the mistrial had been declared on the prosecutor's initiative" and retrial is barred. *Higgins*, 75 F.3d at 333. We have interpreted the *Kennedy* rule in our circuit as follows:

> If after a criminal trial begins the government decides that the case is going badly for it, it cannot dismiss the case and reprosecute the defendant. Nor is it permitted to achieve by indirection what it is not permitted to do directly; and thus it cannot engage in trial misconduct that is intended to and does precipitate a successful motion for mistrial by the defendant.

*United States v. Oseni*, 996 F.2d 186, 187-88 (7th Cir. 1993); *see also Gilmore*, 454 F.3d at 729 ("The key question is whether the prosecutor deliberately introduced the error in order to provoke the defendant into moving for a mistrial, and thereby rescuing a trial going badly.").

The requirement that the prosecutor specifically intended to trigger a mistrial is critical. *Oseni*, 996 F.2d at 188. We have held that *Kennedy* does not bar retrial if the government simply "blunders at trial and the blunder precipitates a successful motion for mistrial." *Id.* Instead, the prosecutor must be specifically "trying to abort the trial" through his or her conduct. *Id.* "It doesn't even matter that [the prosecutor] knows he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial,

not intent to prevail at this trial by impermissible means." *Id.* (internal citations omitted); *see also Doyle*, 121 F.3d at 1086 ("[I]n this Circuit, all that bars a retrial under *Kennedy* is the prosecution's intent to abort the trial.").

A court can conduct an evidentiary hearing in order to determine a prosecutor's intent behind an action that precipitated a mistrial, but it is not a requirement. *See Gilmore*, 454 F.3d at 730; *see also Higgins*, 75 F.3d at 333 (in case where DEA agent witness inappropriately referenced a defendant's actions after being *Mirandized*, district court took testimony from agent to determine if his statements had been designed to provoke a mistrial request). A court can "infer[] the existence or nonexistence of intent from objective facts and circumstances" in situations where it is appropriate to do so. *Kennedy*, 456 U.S. at 675. If a prosecutor advances a plausible explanation for the action that caused the mistrial, and the trial had been going well for the government at the time the action occurred, a judge can accept the prosecutor's explanation without holding an evidentiary hearing. *Oseni*, 996 F.2d at 188; *see also United States v. Jozwiak*, 954 F.2d 458, 460 (7th Cir. 1992). But, "[i]f the judge is not, or a reasonable judge would not be, satisfied with the prosecutor's explanation, an evidentiary hearing is in order." *Oseni*, 996 F.2d at 189; *see also Gilmore*, 454 F.3d at 730 ("[T]he evidentiary hearing serves as a backstop . . . if . . . a reasonable judge would not be[] satisfied with the prosecutor's explanation.").

**2.  Remand for an Evidentiary Hearing**

The district court reached its conclusion that the government had not intended to cause a mistrial without holding an evidentiary hearing, relying instead on the prosecutor's explanation for his action and the objective facts and circumstances.[6] We are troubled by the court's decision to do so, because we believe that the facts and circumstances of what occurred are too strange, and the government's explanation too lacking, to allow for a proper determination of the prosecutor's intent based on inference alone. Given the district court's clear ruling that Delportillo could not testify as to Castillo's reference to Cornelius, the prosecutor's question—"Do you know if Baldomero Castillo . . . had other sources in supply of cocaine besides you?"—raises questions about the prosecutor's intent that have not been satisfactorily answered. We conclude that an evidentiary hearing should have been conducted before a determination was made regarding the government's intent. *See Oseni*, 996 F.2d at 189.

---

[6] A wrinkle in this case is that it was the magistrate judge, who was not present at the trial, who actually engaged in the analysis regarding the prosecutor's intent for the purposes of Cornelius's motion to dismiss. Much like we are doing today, he did so based on pleadings filed by the parties, and by reviewing the trial transcript. The district court adopted those findings wholesale later, in a one-page written order. This is in contrast to a situation in which the district judge, who was present during the events at issue, would be the one articulating the reasoning for the ruling.

The explanations given by government simply do not put to rest the questions regarding the prosecutor's intent in asking a question that, if not intended to violate the judge's evidentiary ruling, seemed at a minimum incredibly likely to do so. The question about other sources of cocaine was, as the district court itself described it, "latent with danger." The government blames Delportillo for the offending answer, arguing that the question he was asked was technically a yes-or-no answer, and that it was his fault for going beyond the scope of the question and answering "Yeah, Mike." This explanation is unsatisfactory. Whether or not the witness went beyond answering a literal yes-or-no question misses the point—why did the prosecutor ask the question in the first place? Yes-or-no format or not, we are at a loss to understand why the government asked the question that it did in light of the court's evidentiary ruling. In his grand jury testimony, Delportillo identified only one other source of cocaine for Castillo besides himself—Michael Cornelius. The government knew this. So to then begin a line of questioning about "other" sources, knowing that Cornelius was the only possible answer, strikes us as bizarre.

At sidebar, the prosecutor stated that Delportillo was incorrectly "anticipating what he thought my next question was going to be but it wasn't and answered that question." But what possible permissible question could have come next? If Cornelius was the only other supplier for Castillo of which Delportillo was aware, why ask about "other suppliers" at all? The lone explanation the government has offered for why the prosecutor

asked the question—in order to be able to "argue by inference" at closing argument that "Castillo and Cornelius were working together"—is not satisfactory. The question could not have led to a permissible answer that would have supported such an inference. Prosecutors may argue reasonable inferences from the evidence that the jury has heard, but cannot "infuse their closing arguments with facts that the court has not admitted into evidence." *United States v. Saadeh*, 61 F.3d 510, 521 (7th Cir. 1995); *see also United States v. Klebig*, 600 F.3d 700, 718 (7th Cir. 2009). Had Delportillo actually just answered "yes" to the question of whether he knew if Castillo had other sources of cocaine, the way the government says he should have, and had the exchange stopped there (which it would have had to), that answer alone would not have supported a reasonable inference at closing that Cornelius and Castillo were coconspirators. *See United States v. Waldemer*, 50 F.3d 1379, 1384 (7th Cir. 1995) (to be a reasonable inference, evidence must "bear [a] logical and proximate connection to the point the prosecutor wishes to prove."). The government's explanation does not hold water. An evidentiary hearing will allow the district court to hear a more thorough explanation of why the government asked the question that it did in light of the court's evidentiary ruling.

The government represents that it explained the scope of the ruling to Delportillo during a brief recess before he testified, but we do not know any details about what that explanation actually was, either from the prose-

cutor or from Delportillo.[7] An evidentiary hearing will also provide an opportunity for the prosecutor, and Delportillo himself, to explain what the instructions actually were. *See Oseni*, 996 F.2d at 189 (remanding for further hearing for explanation from witness regarding her testimony).

The government also argues that its case was going well, meaning there was no "trial going badly" it would want to try and abort in the first place. *See Higgins*, 75 F.3d at 333. We disagree with this characterization. The district court itself found that things were "clearly . . . going badly for the government" and we agree with that conclusion. The only evidence that the government had to support its conspiracy count against Cornelius appears to be Delportillo's testimony about Castillo's statement. The prosecutor conceded during the trial that without Delportillo's testimony about Cornelius, the conspiracy charge against him could not survive a Rule 29 motion to dismiss. Thus, once the district judge made his ruling limiting the scope of Delportillo's testimony, the government must have immediately realized it could not prevail against Cornelius on the more serious of the two counts against him.

---

[7] An approach that might have been helpful would have been for the court to have examined Delportillo before he took the stand, outside the presence of the jury, to ensure that he had a clear understanding of what he could not say. In addition, the court could have instructed Delportillo to ask for a sidebar if he became confused during his testimony, or if he felt that answering a question honestly would require him to discuss something that was prohibited.

It is true that the government opposed Cornelius's request for a mistrial, and instead sought a limiting instruction to the jury. This obviously mitigates in favor of a finding that the government was not trying obtain a mistrial. *See Gilmore*, 454 F.3d at 730 (noting that government opposed motion for mistrial and instead sought limiting instruction). At the same time, however, the prosecutor may have known full well that the alternative he offered would be wholly unacceptable to Cornelius. As Cornelius's counsel stated after the offending testimony, "there is nothing that I can imagine that can be done to cure the tremendous amount of prejudice that is occasioned by such a remark . . . . [T]he cat has been let out of the bag." While the fact that the government opposed the mistrial is clearly significant, that alone does not automatically obviate all concerns about the government's motivations regarding what it did with Delportillo. It cannot be the case that the government's opposition to a mistrial can *per se* negate any inference of intent to goad the defense into moving for one. If that were so, the government could simply object to a mistrial, present an option it knew to be untenable to the other side (and likely to be rejected by the judge), and thus inoculate itself from accusations of *Kennedy*-style intent in every case. So while we agree that the prosecutor's opposition to the mistrial motion is a significant factor, we still feel that in this particular case, an evidentiary hearing should have been held to air out these issues in a meaningful way.

We have previously remanded a case to the district court when we felt that more information should have

been developed regarding the prosecutor's intent in a case involving the *Kennedy* rule. In *Oseni*, just like here, a government witness gave an answer to a question that precipitated the defendant's request for a mistrial, and there were questions as to whether it was the government's intent to trigger that request. 996 F.2d at 187-88. The defendant, charged with a drug offense, asserted a defense that while he may have appeared to have been participating in the charged conspiracy, he was actually reporting what was going on to authorities by making telephone calls to 911. *Id.* at 187. To rebut this defense, the government called to the stand a prosecutor that had met with the defendant and his attorney three times prior to trial. *Id.* Asked whether the defendant had mentioned calling 911 during one of those meetings, she answered that he had done so only during the third meeting, but then went further and volunteered that the defendant's own lawyer had told her he did not believe the 911 story. *Id.* The defendant immediately objected and moved for a mistrial, which the court granted, because the offending testimony was—again, similar to the "Yeah, Mike" answer here—"so inherently prejudicial that no cautionary instruction or striking the evidence can remedy it." *Id.* The defendant then moved for acquittal on double jeopardy grounds, invoking the *Kennedy* rule, and asked for an evidentiary hearing. *Id.* at 188. The district judge denied the evidentiary hearing, concluding that she was satisfied that the prosecutor doing the questioning had been acting in good faith. *Id.* On appeal, we expressed concern with the fact that the district court "did not even elicit an

explanation" from the testifying prosecutor before reaching her conclusion, and remanded for further proceedings where the district judge could obtain an explanation from the witness, and, if necessary, conduct an evidentiary hearing. *Id.* at 189. A similar remand is in order here.

There are other cases where we have not disturbed the district court's decision not to hold an evidentiary hearing following a mistrial, but they involved circumstances that were less troubling, and more easily explained, than what occurred here. In *United States v. Jozwiak*, a young prosecutor in his first trial made an erroneous reference in opening statements to the fact that four of the trial defendants' codefendants had already pled guilty. 954 F.2d at 459. And in *United States v. Gilmore*, the prosecutor made references to the defendant's incarceration during a 90-minute opening statement, despite a ruling *in limine* that such references were impermissible. 454 F.3d at 728-29. In both of these situations, the explanations proffered by the prosecutors for the offending actions were more satisfactory than those advanced by the government in this case. In *Gilmore*, the prosecutor explained to the court that the references to the defendant's incarceration were inadvertent, and that he had "made a mistake." 454 F.3d at 728. This explanation made sense, given that some of the defendants actions in prison were "central to the story" of the charged conspiracy. *Id.* And in *Jozwiak*, a senior prosecutor "confessed error and apologized" for the rookie lawyer's mistaken reference to the fact that other defendants had pled guilty. 954 F.3d at 459. And unlike

here, there were no indications that the cases were going badly for the government; in both cases, the trial had just commenced. In *Jozwiak*, for example, in contrast to what the judge observed here, the district court noted that "[t]his certainly was not a situation where a case was going poorly for the government motivating it to create a mistrial situation." *Id.* at 460. And as we noted on appeal in *Jozwiak*, "[t]he prosecutor's case . . . was not going downhill; it was not *going*, period. It ended within minutes after the prosecutor rose to speak." *Id.* (emphasis in original).

The circumstances here, in contrast, are simply more troubling and raise more questions than those in *Jozwiak* or *Gilmore*. Whereas those cases involved what appeared to be "blunders", *Oseni*, 996 F.2d at 188, here there are more serious questions about the government's intent given the timing and circumstances of what occurred. As we did in *Oseni*, we conclude that further explanation and investigation is needed before reaching a firm conclusion on the prosecutor's intent.

We stress the limited scope of our ruling. We express no opinion on whether it was in fact the prosecutor's intent to provoke Cornelius into moving for a mistrial in asking the question that he did, and our opinion should not be taken to be a conclusion either way on that ultimate issue. We simply hold that the circumstances were troubling enough, and the government's explanation unsatisfactory enough, that it was not reasonable for the district judge to have reached a conclusion without an evidentiary hearing. *See Oseni*, 996 F.2d

at 189. This is a case where the "backstop" of an evidentiary hearing was necessary. *Gilmore*, 454 F.3d at 730.


### III.  CONCLUSION

We VACATE the district court's double jeopardy ruling and REMAND to the district court with instructions to hold an evidentiary hearing. While the exact contours of such a hearing will be up to the district court to determine, we would expect it to involve testimony from at least the prosecutor and Delportillo.